# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

VANESSA ENOCH, *et al.*,
    Plaintiffs,

Case No. 1:16-cv-661
Litkovitz, M.J.

vs.

HAMILTON COUNTY
SHERIFF'S OFFICE, *et al.*,
    Defendants.

**ORDER**

    Plaintiffs Vanessa Enoch and Avery Corbin bring this action under 42 U.S.C. § 1983 and Ohio law seeking injunctive relief and civil damages for alleged violations of their rights arising out of their warrantless arrests and searches and seizures of their personal property by defendants. The matter is before the Court on the motion for judgment on the pleadings filed by defendants Hamilton County Sheriff's Office, Hamilton County Sheriff Jim Neil, Deputy Sheriff Hogan, and Deputy Sheriff Nobles (Doc. 41), plaintiffs' response in opposition to the motion (Doc. 51), and defendants' reply in support of the motion (Doc. 60).

## I. Factual background

    Plaintiffs originally filed separate complaints that were consolidated under this case number. (*See* Doc. 18).[1] After the cases were consolidated, plaintiffs filed an amended complaint that named several individual defendants and presented 12 causes of action. (Doc. 38). The parties subsequently stipulated to dismissing with prejudice four defendants - Sgt. Wolfzorn, Cpl. Ray Knight, Dep. Phil Ferguson, and Dep. J. Horton.[2] (Doc. 54). The only defendants remaining in the case are the Hamilton County Sheriff's Office and individual

---

[1] Plaintiff Corbin's complaint was filed in Case No. 1:16-cv-682, *Avery Corbin v. Hamilton County Sheriff's Office, et al.*

[2] Before they were dismissed from the case, these four defendants filed a motion to dismiss the complaint. (Doc. 40). The Court will deny the motion as moot.

defendants Neil, Hogan and Nobles.

The amended complaint includes the following allegations: Plaintiffs Enoch and Corbin are African-American residents of Ohio. (Doc. 38, ¶¶ 7, 8). At the time of the events giving rise to the complaint, Enoch was reporting on and researching the criminal case of *State of Ohio v. Tracie Hunter* (the *Hunter* case). (*Id.*, ¶ 7). Defendant Neil is the Sheriff of Hamilton County, Ohio, who exercises final policymaking authority for the Hamilton County Sheriff's Office and for Hamilton County, Ohio. (*Id.*, ¶ 10). Defendants Hogan and Nobles are deputies employed by the Hamilton County Sheriff's Office. (*Id.*, ¶¶ 11, 12). At all relevant times, the individual defendants were acting under color of state law. (*Id.*, ¶¶ 10, 11, 12). Defendants Neil, Hogan and Nobles are sued in their individual and official capacities. (*Id.*).

On June 25, 2014, plaintiffs attended a pre-trial hearing in the *Hunter* case at the Hamilton County Courthouse (County Courthouse). (*Id.*, ¶ 20). At the pre-trial hearing, the presiding judge specifically restricted all court attendees from using their "electronic devices" inside the courtroom during the official court proceedings; however, the judge did not issue a prohibition on the use of electronic devices in the County Courthouse hallways. (*Id.*, ¶ 2). Following the hearing, plaintiffs went into the public hallway of the County Courthouse and began taking snapshots and "otherwise recording" Hunter, her lawyer, and events occurring in the hallway with their "mobile devices." (*Id.*, ¶ 20). At the same time, approximately 20 other people gathered in the hallway and began using their "news cameras, cell phones, iPads and/or tablet devices" to record an "'impromptu' press conference" with Hunter's attorney and other events occurring in the hallway. (*Id.*, ¶ 21). When plaintiff Enoch left the crowd to locate a restroom, defendants Hogan and/or Nobles stopped her in the hallway, demanded the password for her mobile device "under threat of arrest," and searched the contents of her iPad without a

warrant. (*Id.*, ¶ 22). Although plaintiff Enoch fully complied with the deputies' directives, they detained and arrested her. (*Id.*). Defendants Hogan and Nobles also threatened to arrest plaintiff Corbin if he did not stop recording public events in the hallway, and a short time later they detained and arrested him for using his iPad and recording public events in the hallway. (*Id.*, ¶ 23). They also seized and searched plaintiff Corbin's iPad without a warrant. (*Id.*). The defendant deputies did not stop, detain, search or arrest any of the 16 to 18 white individuals who were in the hallway using "news cameras, cell phones or other electronic recording devices" and did not search or seize any of these individuals' mobile devices: only plaintiffs were arrested and taken to the Sheriff's Office. (*Id.*, ¶ 24).

When plaintiff Enoch asked en route to the Sheriff's Office why she was being arrested, Nobles and Hogan responded that they did not know. (*Id.*, ¶ 25). Plaintiffs were both held in custody for nearly 90 minutes, during which time defendants Nobles and Hogan searched plaintiff Enoch's iPad a second time. (*Id.*, ¶ 26). The search did not disclose any video content on the iPad. (*Id.*, ¶ 27).

Defendants Nobles and Hogan eventually charged plaintiff Enoch with the minor misdemeanor offense of disorderly conduct in violation of Ohio Rev. Code § 2917.11. (*Id.*). The citation falsely stated that Enoch "was observed 'yelling at Dep. while court was in session'" and she "refused to ID self when asked by Dep." (*Id.*). Neither deputy observed plaintiff committing an unlawful act while she was either inside or outside the courtroom. (*Id.*).

Plaintiffs allege that at all relevant times, Nobles and Hogan's acts described above were "in accordance with official custom, policy or practice of Hamilton County as implemented and enforced by Defendant Neil acting as the highest official of Hamilton County with respect" to those customs, policies and practices. (*Id.*, ¶ 29). Plaintiffs contend that defendant Neil was or

3

should have been aware of the deputies' alleged unlawful conduct but he failed to "properly" investigate their misconduct or to take any disciplinary action against them. (*Id.*, ¶ 30).

Plaintiffs further allege that on June 30, 2014, Enoch was served with a second criminal citation based on a charge against her by Hogan and Nobles for the misdemeanor offense of failure to disclose information in violation of Ohio Rev. Code § 2921.09. (*Id.*, ¶ 31). The citation falsely stated that plaintiff failed to "identify self while Identified [sic] by other deputy's [sic] and stopped and question [sic] by myself." (*Id.*). On an unspecified date, the defendant deputies also charged plaintiff Corbin with the minor misdemeanor of disorderly conduct under Ohio Rev. Code § 2917.11 even though defendants knew Corbin had violated no law and had complied with all "reasonable directives." (*Id.*, ¶ 37).

On August 1, 2014, the charges against Enoch were dismissed by the City of Cincinnati Prosecutor's office and the state court dismissed the charges against both plaintiffs. (*Id.*, ¶¶ 34, 38). On July 21, 2014, shortly before the charges against her were dismissed, plaintiff Enoch lost her consulting job as a direct result of her arrest and charges. (*Id.*, ¶ 33). This caused and has continued to cause her great financial and emotional distress. (*Id.*). Corbin has also suffered "significant emotional trauma, professional humiliation and financial loss" and will continue to experience such loss in the future. (*Id.*, ¶ 40).

Based on these allegations, plaintiffs bring the following claims for relief: (1) a First Amendment claim for violation of their right to free speech based on their detention/arrest and search and seizure of their iPads, which plaintiffs allege occurred without a warrant or probable cause (Count I); (2) a Fourth Amendment claim for violation of their right to be free from unreasonable searches and searches based on the alleged search and seizure of plaintiffs and their personal belongings, which plaintiffs allege occurred without a warrant or probable cause (Count

II); (3) a Fourth Amendment Claim for false arrest and false imprisonment (Count III); (4) a Fourth Amendment claim for malicious prosecution based on defendants' acts of charging plaintiffs with criminal offenses and pursuing criminal prosecutions despite allegedly knowing there was no factual or legal basis for the charges (Count V); (5) Fourth and Fourteenth Amendment claims against defendants Neil and Hamilton County for ratifying the defendant deputies' alleged unconstitutional acts by failing to investigate their conduct or take any remedial or disciplinary action against them (Count VI); (6) a state law claim for negligent and intentional infliction of emotional distress (Count VIII); (7) a state law claim for invasion of privacy based on the search of plaintiffs' iPads (Count X); and (8) a claim for punitive damages against each of the individual defendants for committing the acts described in the complaint in willful, wanton and reckless disregard of plaintiffs' rights (Count XII).[3]

## II. Motion for judgment on the pleadings

### A. Defendants' motion

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on all causes of action. (Doc. 41). Defendants allege that this dispute involves defendants Hogan and Nobles' enforcement of Hamilton County Court of Common Pleas Local Rule 33(D)(6), which prohibits photography and video recording in the County Courthouse.[4] (*Id.* at 2). Defendants allege that the record in *State v. Hunter*, Case Nos. B-1400110/B1400199, contains multiple requests by members of the news media under Local Rule 30 and Ohio Rule of Superintendence 12 to record by video and photograph the proceedings in the *Hunter* case; however, plaintiffs did not make such a request prior to June 25, 2014. (*Id.*; attachments). Defendants imply the

---

[3] Plaintiffs brought additional claims for excessive force under the Fourth Amendment (Count IV), malicious prosecution under state law (Count VII), false imprisonment/false arrest under state law (Count IX), and assault and battery under state law (Count XI). (Doc. 38). Plaintiffs have elected to withdraw those claims. (Doc. 51 at 22).

[4] The Rule can be found at http://hamiltoncountycourts.org/index.php/common-pleas-local-rule-33/.

applications show that contrary to plaintiffs' allegations, they acted without a racial animus. (*Id.* at 9, n. 1).

Defendant Neil argues that he cannot be held liable in his supervisory capacity based on the passive role he allegedly played or the tacit approval he purportedly gave the other individual defendants' actions, and plaintiffs' claims against him in his official capacity must be dismissed because plaintiffs have not identified a policy, practice or custom giving rise to a violation of their constitutional rights. (*Id.* at 3-4). Further, defendants allege that the Hamilton County Sheriff's Office and each of the individual defendants are immune from liability under the Eleventh Amendment because in enforcing Local Rule 33, defendants were carrying out policies of the Hamilton Court of Common Pleas, which is an arm of the state; thus, defendants are entitled to the same immunity as the state entity. (*Id.* at 5-7). Defendants Nobles and Hogan allege that they are entitled to qualified immunity because no reasonable deputy sheriff would know that enforcement of Local Rule 33(D)(6), which is substantially identical to S.D. Ohio Civ. R. 83.2(a) governing proceedings in this Court, would violate plaintiffs' First Amendment rights. (*Id.* at 7-10). Finally, defendants allege that plaintiff Corbin's claims are moot because he does not seek any relief in the amended complaint. (*Id.* at 13).

In response, plaintiffs argue that defendants' motion for judgment on the pleadings seeking to dismiss their claims is premature and the Court should defer ruling on the motion pending the completion of discovery. (Doc. 51). Plaintiffs allege that defendants have submitted matters outside the pleadings which are not properly considered in connection with the Rule 12(c) motion, and plaintiffs further contend that documents defendants have submitted with the motion are not relevant to plaintiffs' claims. Specifically, plaintiffs deny that this case involves defendants' enforcement of Local Rule 33(D)(6) and they contend there was no judicial order in

place at the time of their arrests which prohibited recording events in the hallways of the County Courthouse. (*Id.* at 2). Plaintiffs allege that they were arrested pursuant to an official custom, policy or practice of Hamilton County implemented and enforced by defendant Neil as the highest Hamilton County official with respect to such policies and procedures. (*Id.*). Plaintiffs contend that if the Court chooses to address the merits of defendants' Local Rule 33 defense, which necessarily relies on matters outside the pleadings, the Rule 12(c) motion must be treated as a motion for summary judgment and plaintiff must be given an opportunity to conduct discovery. Plaintiffs further allege that whether defendants are entitled to qualified immunity cannot be resolved on a Rule 12(c) motion because resolution of the issue depends on matters outside the pleadings and, if the Court were to consider this defense, their rights were clearly established at the time of their arrests and the seizure of their property. (*Id.* at 18-21).

Plaintiffs also argue that they have stated a claim to relief against all defendants. Plaintiffs assert they have stated a claim against defendant Neil in his individual capacity by alleging he breached a duty to investigate and failed to take any remedial or disciplinary action against the individual defendants despite being aware of their misconduct. (*Id.* at 9, citing Doc. 38, ¶¶ 10, 29, 30, 61). Plaintiffs allege they have stated a claim to relief against defendant Neil in his official capacity because they have alleged a claim of "ratification" against Neil, and ratification can constitute an "official policy" for purposes of imposing liability under § 1983 on a county, which is the governmental entity Neil represents. (*Id.* at 12-13). Plaintiffs allege that Neil "ratif[ied] and endors[ed]" the deputy sheriffs' conduct despite knowing the deputies violated plaintiffs constitutional rights by "arresting them, [] preventing them from gathering and recording information of public import," and "seizing their iPads." (*Id.* at 12-13).

Plaintiffs also argue that defendants are not protected by Eleventh Amendment immunity because they were acting in their capacities as law enforcement officers, not arms of the state. (*Id.* at 14-18). Finally, plaintiff Corbin alleges his claims are not moot because he sought damages in his initial complaint and alleges injuries in each claim to relief set out in the amended complaint. (*Id.* at 21).

In reply, defendants assert that it is proper on a Rule 12(c) motion for the Court to consider public records that are not reasonably subject to dispute and the accuracy of which cannot reasonably be questioned. (Doc. 60). Defendants argue that Local Rule 33 meets this test and that plaintiffs admitted the existence of the Rule by alleging in the original complaint that defendants Hogan and Nobles were enforcing Local Rule 33(D)(6) and by attaching a journal entry referencing Local Rule 33(D)(6) to their motion for preliminary injunction filed in this case. (*Id.* at 5, citing Doc. 33 at 12). Defendants contend that because plaintiffs admit they were using their mobile devices to photograph and video record events in the County Courthouse hallway, it is clear that defendants were carrying out the policies, and enforcing the Local Rules, of the Hamilton County Common Pleas Court and are protected by Eleventh Amendment immunity. Defendants Hogan and Nobles allege they are entitled to qualified immunity because defendants reasonably relied on Local Rule 33 as shown by the existence of a similar rule prohibiting audio and visual recording in the federal courthouse in Cincinnati and the absence of any case law finding these types of prohibitions to be unconstitutional. (*Id.* at 6-7, citing S.D. Ohio Civ. R. 83.2(a)). Defendants also argue that plaintiffs cannot prove racial discrimination because they cannot show that they were similarly situated to white individuals, many of whom were allegedly "credentialed to cover the June 24, 2014" hearing whereas plaintiffs were not. (*Id.* at 1-2). Defendants allege that if the federal claims are dismissed, the Court should decline

to exercise supplemental jurisdiction over plaintiffs' state law claims. (*Id.* at 9). Finally, defendants contend that plaintiff Corbin cannot rely on the original complaint to show he has requested relief because the amended complaint supersedes the original complaint. (*Id.*).[5]

## B. Standard of review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008). In determining a Rule 12(c) motion, the court must accept all well-pled factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino,* 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation and quotation marks omitted)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

If "matters outside the pleadings are presented to and not excluded by the court" on a

---

[5] The Court notes that the original complaints were filed pro se by plaintiff Enoch and plaintiff Corbin. Counsel subsequently entered their appearance on the record and filed a consolidated amended complaint.

9

motion under Rule 12(c) or 12(b)(6), the court must treat the motion as one for summary judgment under Rule 56 and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court can consider "exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to" the Rule 12(c) or 12(b)(6) motion without converting the motion to one for summary judgment, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (construing Rule 12(b)(6)). *See also Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.,* 672 F.3d 396, 399 (6th Cir. 2012) (same). The court also considers matters of which it may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (analyzing Rule 12(b)(6)).

### C. Matters outside the pleadings

In resolving defendants' motion for judgment on the pleadings under Rule 12(c), the Court can consider the Local Rules of the Hamilton County Common Pleas Court and documents that are part of the certified case record in the *Hunter* case without converting the motion to a summary judgment motion. *See* Fed. R. Civ. P. 12(d). The County Court rules and certified case documents are either public records or matters of which this Court can take judicial notice. There is no question as to the authenticity of the records. The Court will therefore consider the records where appropriate in resolving defendants' Rule 12(c) motion without converting the motion to a summary judgment motion.

### D. Claims against defendant Neil

Plaintiffs sue defendant Neil in his individual and official capacities. Plaintiffs bring their federal claims against Neil and the other defendants under 42 U.S.C. § 1983. Section 1983

creates a civil cause of action against a defendant who, while acting under color of state law, deprives another person of the "rights, privileges or immunities secured by the Constitution or laws of the United States." *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (citation omitted). To state a claim for relief under § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citations omitted).

Plaintiffs' complaint alleges several violations of plaintiffs' federal constitutional rights. Plaintiffs allege that: (1) defendants violated plaintiffs' rights to free speech under the First and Fourteenth Amendments; (2) defendants subjected plaintiffs to unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments; (3) defendants subjected plaintiffs to false arrest/imprisonment in violation of the Fourth and Fourteenth Amendments; and (4) defendants subjected plaintiffs to malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiffs seek to hold defendant Neil liable for these constitutional violations in his individual capacity by alleging he breached a duty to investigate and failed to take any remedial or disciplinary action against the individual defendants despite being aware of their misconduct. (Doc. 51 at 9, citing ¶¶ 10, 29, 30, 61). Plaintiffs also seek to hold defendant Neil liable in his official capacity. They allege Neil is a Hamilton County policymaker and that the actions of defendants Hogan and Nobles were committed in accordance with the official custom, policy or practice of Hamilton County as implemented and enforced by defendant Neil. They further allege defendant Neil implemented an official policy when he ratified and endorsed the deputy sheriffs' conduct despite knowing they violated plaintiffs' constitutional rights by falsely arresting them without a warrant or probable cause, seizing and searching their iPads

without a warrant or probable cause, maliciously prosecuting them, and preventing them from exercising their First Amendment rights.

A personal capacity suit seeks to impose individual liability on a government officer for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A supervisor can be held liable under § 1983 in his individual capacity only if he "encouraged the specific incident of misconduct or in some other way directly participated in it," or "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Morrison v. Bd. of Trustees of Green Tp.*, 529 F. Supp.2d 807, 826-27 (S.D. Ohio 2007), *aff'd*, 583 F.3d 394 (6th Cir. 2009) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "Merely having the right to control employees is not enough . . . , nor is merely being aware of the misconduct." *Id.* (quoting *Leary v. Daeschner*, 228 F.3d 729, 740 (6th Cir. 2000) (citing *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "Supervisory liability 'requires that there must be a direct causal link between the acts of individual officers and the supervisory defendants.'" *Clellan v. Karnes*, No. 2:09-cv-930, 2011 WL 3627399, at *3 (S.D. Ohio Aug. 17, 2011) (quoting *Hays v. Jefferson Cnty., Ky,* 668 F.2d 869, 872 (6th Cir. 1982) (citing *Rizzo v. Goode,* 423 U.S. 362, 370-71 (1976)). Thus, where a complaint alleges nothing more than the existence of supervisory liability, dismissal of a claim against a supervisor for the actions of his subordinates is appropriate. *See Fuller v. Franklin County, Ohio*, No. 2:14-cv-2556, 2016 WL 5717608, at *6 (S.D. Ohio Sept. 30, 2016) (claims against sheriff dismissed where only allegations against him were that he was "the party with direct supervisory authority over" the corrections center and guards who allegedly committed the constitutional violations and the complaint gave no information concerning the sheriff's role that would render a claim for

supervisory liability against him plausible).

An official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent." *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against a defendant in his official capacity under § 1983 is equivalent to a suit against the local government entity. *Powers v. County of Lorain*, 259 F. App'x 818, 822, n.2 (6th Cir. 2008). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166) (quoting *Monell*, 436 U.S. at 694). In addition to identifying "conduct properly attributable to the municipality" itself, the plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

### i. Claims against defendant Neil in his individual capacity

Accepting the allegations of the amended complaint as true and liberally construing them in plaintiffs' favor, the Court finds plaintiffs have failed to state a claim to relief against defendant Neil in his individual capacity. Plaintiffs allege that although Neil knew or should have known of Nobles and Hogan's alleged unlawful conduct and had a duty to investigate their misconduct, Neil failed to properly investigate their misconduct or to take any disciplinary action against them, thereby expressly or tacitly approving of their unlawful conduct. (Doc. 51 at 9). Plaintiffs' allegations that in essence Neil had a right to control Hogan and Nobles and that he

was aware of their misconduct are not sufficient to support the imposition of liability on defendant Neil in his individual capacity. *Morrison*, 529 F. Supp.2d at 826-27.

The decisions plaintiffs cite to support their argument that Neil is subject to individual liability for ratifying the deputy sheriffs' alleged unconstitutional conduct are distinguishable and do not support a similar outcome here. (*See* Doc. 51 at 9-11, citing *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989); *Wells v. Bishop*, No. 1:05-cv-79M, 2007 WL 2815971, at *2 (W.D. Ky. Sept. 27, 2007); *Nanda v. Bd. of Trustees of U. of Illinois*, No. 00 C 4757, 2002 WL 1553330, at *4 (N.D. Ill. July 12, 2002), *aff'd*, 303 F.3d 817 (7th Cir. 2002)). The Sixth Circuit addressed the liability of a sheriff in his *official* capacity in *Marchese*. There the defendant sheriff was found liable under § 1983 to a prisoner who was severely beaten twice while in the control and custody of sheriff's officers based on the sheriff's (1) failure to train and discipline his officers, and (2) failure to investigate incidents. *Marchese*, 758 F.2d at 188. The Court found both of these omissions were official policies of the sheriff and that the latter official policy constituted ratification of the officers' illegal acts. *Id. Marchese* does not support the imposition of liability on Neil in his individual capacity.

Likewise, the Sixth Circuit in *Leach* addressed the § 1983 liability of a county sheriff sued in his *official*, not individual, capacity. The Court determined the county had a "policy or custom" of deliberate indifference to a paraplegic inmate's medical needs based on (1) the sheriff's failure to provide proper training to address the medical needs of disabled inmates, and (2) the numerous instances of past mistreatment of similarly disabled inmates and the sheriff's failure to investigate and punish the offending parties. The Sixth Circuit reasoned that "[c]ourts are not required to ignore the fact of life that policies can be and often are subtly but effectively

14

promulgated by seemingly benign conduct." *Leach*, 891 F.2d at 1246 (6th Cir. 1989). The Court of Appeals did not hold that the sheriff could be held personally liable under these circumstances.

In *Wells*, the Court applied the *Marchese* standard to find that failure to investigate grievances related to an unconstitutional beating could serve as ratification of the unconstitutional act and show the county had an unconstitutional policy for purposes of the plaintiff's suit against the defendant in his official capacity. *Wells*, 2007 WL 2815971, at *4. However, the *Wells* court did not address whether failure to investigate a grievance could give rise to individual liability on a supervisor's part.

Finally, in *Nanda*, the only case cited by plaintiffs that addresses a supervisor's *individual* liability, "the essence" of the plaintiff's claim against the supervisory defendants was that the supervisors knew of their subordinate's discriminatory conduct and "'facilitated, approved or turned a blind eye' with deliberate or reckless disregard" for the plaintiff's constitutional rights. *Nanda*, 2002 WL 1553330, at *4. The Seventh Circuit found that the defendants could be held individually liable for this activity if they "did 'facilitate' discrimination." *Id.* The Court further found that the plaintiffs' allegations satisfied the standard for supervisory liability advanced by the defendants in that case, i.e., defendants "'knowingly, willfully or at least recklessly' caus[ed] the alleged deprivation by action or failure to act." *Id.*, at *5. Even assuming the standard set forth by the Seventh Circuit in *Nanda* applied here, plaintiffs' allegations are not sufficient to satisfy that standard because they do not allege that Neil "facilitated" the deputy sheriffs' purported misconduct or that Neil knowingly, willfully, or recklessly caused the deprivation of their rights by any action or omission on his part.

The allegations of the amended complaint, accepted as true, are not sufficient to state a

claim against defendant Neil in his individual capacity under a theory of supervisory liability. Plaintiffs' factual allegations do not support a finding that Neil "either encouraged or in some way directly participated in" the alleged unconstitutional acts as required to impose individual liability on Neil as the deputy sheriffs' supervisor. *Leach*, 891 F.2d at 1246. Plaintiffs' claims against defendant Neil in his individual capacity must therefore be dismissed.

### ii. Claims against defendant Neil in his official capacity

Plaintiffs argue that the amended complaint effectively states a claim against defendant Neil in his official capacity because it includes allegations Neil knew of Nobles and Hogan's unconstitutional actions and "effectively endorsed and ratified their wrongful acts." (Doc. 51 at 13, citing Doc. 38, ¶¶ 29, 30, 61). Plaintiffs allege that the Sixth Circuit has found such knowledge and ratification of a subordinate's conduct can constitute "official policy" sufficient to support the imposition of liability against a county. (*Id.*, citing *Marchese*, 758 F.2d 181; *Leach*, 891 F.2d at 1248). They argue that further factual development of the issue of whether the deputy sheriffs were relying on Local Rule 33 at the time of plaintiffs' arrests and seizures of their iPads is warranted based on this theory of liability.

"[T]o be liable under a ratification theory, the municipality's failure to investigate must be indicative of an official policy." *Morrison v. Bd. of Trustees of Green Tp.*, 529 F. Supp.2d 807, 824-26 (S.D. Ohio 2007), *aff'd,* 583 F.3d 394 (6th Cir. 2009). The Court in *Morrison* emphasized in summary judgment proceedings that a post-injury failure to investigate is "*a fact which may permit an inference* that the misconduct which injured the plaintiff was pursuant to an official policy or custom," but that there are "stringent proximate cause requirements." *Id.* (quoting *Tompkins v. Frost,* 655 F. Supp. 468 (E.D. Mich. 1987) (emphasis added by *Tompkins*) (citing *City of Oklahoma v. Tuttle,* 471 U.S. 808 (1985) and *City of Springfield v. Kibbe,* 480

U.S. 257 (1987)). The Court cautioned that "inferring a municipal-wide policy based solely on one instance of potential misconduct runs dangerously close to 'the collapsing of the municipal liability standard into a simple *respondeat superior* standard." *Id.* (quoting *Thomas v. City of Chattanooga,* 398 F.3d 426, 432-33 (6th Cir. 2005) (plaintiffs "must show not only that the investigation was inadequate, but that the flaws in th[e] particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause [of the claimed injury]"); *Brown v. Shaner,* 172 F.3d 927, 931 (6th Cir. 1999) ("summary judgment for the municipality was proper where plaintiffs produced no evidence indicating that the city had in the past failed to investigate and discipline the use of excessive force by its police personnel where such discipline was justified").

The Court finds that plaintiffs have satisfied basic pleading requirements as to their claim against defendant Neil in his official capacity. Plaintiffs allege that they were unlawfully arrested for using their mobile devices in the County Courthouse hallways and their recording devices were seized and searched while no similarly-situated white individuals were subjected to the same treatment. (Doc. 38, ¶¶ 23, 24). Plaintiffs contend that in arresting them and seizing and searching their mobile devices, the deputy sheriffs acted in accordance with the official custom, policy or practice of Hamilton County as implemented and enforced by defendant Neil, the highest Hamilton County official with respect to those customs, policies, and practices. (*Id.*, ¶ 29). Plaintiffs allege that the deputy sheriffs informed plaintiff Enoch that they did not know why they were arresting her, which supports an inference that the deputy sheriffs were acting in accordance with an undisclosed custom, policy or practice. (*Id.*, § 25). Taken as true, plaintiffs' allegations are therefore sufficient to (1) identify a "policy or custom" that played a part in the

17

alleged violation of plaintiffs' rights by defendants Hogan and Nobles, and (2) permit an

inference that the policy or custom was the moving force behind plaintiffs' alleged injuries. *See*

*Hafer*, 502 U.S. at 25; *Cherrington,* 344 F.3d at 645. Thus, plaintiffs have stated a plausible

claim to relief against defendant Neil in his official capacity.

### E. Claims against defendants Hogan and Nobles

### *i. Eleventh Amendment immunity*

Defendants Hogan and Nobles contend they are entitled to sovereign immunity under the

Eleventh Amendment on plaintiffs' federal claims. (Doc. 41 at 5-7). Defendants allege that by

enforcing Local Rule 33, they were carrying out the policies of the Hamilton County Court of

Common Pleas, an arm of the state which is immune from money damages, and they are

therefore entitled to the same immunity afforded the Common Pleas Court.

Plaintiffs deny that defendants are protected by Eleventh Amendment immunity. (Doc.

51 at 14-18). They dispute that defendants were enforcing Local Rule 33, which plaintiffs allege

does not prohibit the use of recording devices in the County Courthouse hallways, when they

arrested plaintiffs and seized their iPads. Plaintiffs note that they allege in the amended

complaint that at the time of their arrests and seizure of their property, "the presiding judge

issued no [] prohibition as to the use of electronic devices in the hallways of the courthouse."

(*Id*. at 15, citing Doc. 38, ¶ 2). Further, plaintiffs argue that if the Court were to accept

defendants' argument, sovereign immunity would apply to protect officers from liability under

the Fourth Amendment every time an officer made an arrest under a state criminal law, which is

not a logical outcome. Finally, plaintiffs argue that a finding of immunity would depend on a

determination that defendants were reasonably following the Local Rule when they arrested

plaintiffs and they did not apply the law in a discriminatory manner, which are determinations

that cannot be made at the pleading stage.

In reply, defendants allege that plaintiffs "have admitted the existence of Local Rule 33 and Judge [Megan] Shanahan's[6] interpretation of it," and that plaintiffs further admit they were using their mobile devices to photograph and video record events in the County Courthouse hallway. (Doc. 60 at 5, citing Doc. 33 at 12, Doc. 38, ¶ 20). Defendants contend that plaintiffs alleged in their initial complaints that the deputy sheriffs were enforcing Local Rule 33 and plaintiffs submitted an entry by Judge Shanahan dated October 25, 2016 in support of their preliminary injunction motion which reads in part:

> Hamilton County Local Rule 33(D)(6) prohibits the operation of any electronic device, cell phone, still or video camera, and any recording device, in any courtroom or ancillary area without the express permission of the Court. . . . [7]

(*Id.*, citing Doc. 33 at 12, Doc. 38, ¶ 20). Defendants summarily conclude they are entitled to

---

[6] Judge Megan Shanahan is a Hamilton County Common Pleas judge. To support their request for a preliminary injunction in this lawsuit, plaintiffs submitted an order which Judge Shanahan issued in a matter unrelated to the *Hunter* case (*State of Ohio v. Raymond Tensing*, B1503961 (Ham Cnty. C.P. Ct.)). (Doc. 33 at 12). The motion for preliminary injunction has been denied as moot. (Doc. 59).

[7] The entry continues as follows:

> . . . . With regard to the ancillary area outside of the courtroom, the Court hereby declares all hallways on the fifth floor of the Courthouse the ancillary area under Local Rule 33(D)(6) for purposes of the trial in the above-captioned case.

> Accordingly, with regard to the ancillary area the Court hereby orders as follows:

> 1. Only traditional video cameras and still photography operated by a media representative authorized pursuant to the Court's October 19, 2016 Entry and Order will be permitted to video, film or photograph in the ancillary area.

> 2. No one, other than court staff and security, will be permitted to use electronic devices such as cell phones, tablets, laptops, recording devices, and hand held devices for taking photos, making video recordings, or conducting live streaming such as Periscope or Facebook Live in any hallway on the fifth floor.

> 3. Media representatives authorized pursuant to the Court's October 19, 2016 Entry and Order will be permitted to use any electronic device inside Room 566 – the dedicated media room.

> 4. The use of any electronic device, including cameras, videos, cell phones, tablets, laptops, and any device capable of recording is strictly prohibited in any hallway cleared by security for the ingress or egress of prospective or empaneled jurors.
> . . . .

judgment on plaintiffs' claims arising from their use of cameras in the County Courthouse because defendants are protected by Eleventh Amendment immunity for carrying out and enforcing the Local Rules of the Hamilton County Court.

Any form of relief sought against a State in federal court is barred under the Eleventh Amendment unless the State has waived its sovereign immunity. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). Damages actions against state officers in their official capacities constitute lawsuits against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). A federal court may impose prospective declaratory relief to compel a State official to comply with federal law "regardless of whether compliance might have an ancillary effect on the state treasury[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989), and *Ex parte Young*, 209 U.S. 123, 160-62 (1908)).

Counties and county officers do not share the States' sovereign immunity. *Crabbs v. Scott*, 786 F.3d 426, 428-31 (6th Cir. 2015) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). However, where a county officer represents the State in the "particular area" or on the "particular issue" in question, then the officer will be entitled to immunity. *Id.* (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)). Whether a county officer represents the State "depends on how state and local law treat the officer in that setting." *Id.* (citing *McMillian*, 520 U.S. at 786). Factors relevant to that determination include: "(1) the State's potential liability for a judgment; (2) how state statutes and courts refer to the officer; (3) who appoints the officer; (4) who pays the officer; (5) the degree of state control over the officer; and (6) whether the functions involved fall within the traditional purview of state or

local government." *Id.* (citing *Ernst v. Rising,* 427 F.3d 351, 359 (6th Cir. 2005) (*en banc*); *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 44-45 (1994)).

Ohio county sheriffs generally are treated as county policymakers. *Id.* at 430 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484-85 & n.13 (1986)). However, county officials are considered "an arm of the State" for Eleventh Amendment purposes when they are sued for acts that involve "simply [] complying with state mandates that afford no discretion." *Id.* (citing *Brotherton v. Cleveland,* 173 F.3d 552, 566 (6th Cir. 1999); *Vives v. City of N.Y.,* 524 F.3d 346, 353 (2d Cir. 2008); *Richman v. Sheahan,* 270 F.3d 430, 440 (7th Cir. 2001)).

In *Crabbs,* the Sixth Circuit weighed the six factors relevant to the determination of whether the county sheriff in the case before it was acting as a state official for Eleventh Amendment purposes. The Court found that the county sheriff acted as a county, not a state, official, with respect to DNA collection in the plaintiff's case because: (1) the county, not the State, would satisfy any judgment against the sheriff; (2) Ohio law classifies county sheriffs as "county officials" and "employees" (*see* Ohio Rev. Code §§ 301.28(A)(3), 2744.01; *Thurlow v. Bd. of Com'rs of Guernsey Cnty.,* 91 N.E. 193, 194 (1910)); (3) the voters in each county elect their own sheriff; (4) each county is responsible for paying the sheriff's salary and funding the sheriff's offices; (5) each county board has "final authority" over the sheriff's budget; and (6) the sheriff serves as the county's "chief law enforcement officer" with jurisdiction "coextensive with" the county's borders and a sheriff's law enforcement duties at common law represented local functions. *Id.* at 429.

For the reasons stated in *Crabbs,* application of the relevant factors to the allegations of the amended complaint shows that Nobles and Hogan were not acting as State officers in connection with the arrests of plaintiffs and seizure of their iPads. Under the Ohio statutory

scheme, deputy county sheriffs are deemed to be county, not state, officials. Thus, defendants have not shown they are entitled to sovereign immunity under the Eleventh Amendment.

### ii. Qualified immunity

Defendants contend they are entitled to qualified immunity insofar as plaintiffs sue them for money damages under § 1983 in their individual capacity. (Doc. 41 at 7-10). Defendants do not challenge plaintiffs' constitutional claims on the merits in their motion for judgment on the pleadings. Rather, they attempt to characterize plaintiffs' federal claims as stemming from the deputy sheriffs' attempts to enforce Local Rule 33, which defendants allege imposes the following restrictions: (1) it prohibits the use of cameras in the County Courthouse; and (2) per Judge Shanahan's interpretation of the rule, which defendants allege is the "only judicial interpretation of that rule," Local Rule 33 "always extends [the prohibition] from the courtrooms to all ancillary areas." (Doc. 60 at 6). Defendants submit that no reasonable deputy sheriff would understand that enforcing the rule would violate plaintiffs' constitutional rights because the Southern District of Ohio has a substantially similar rule, S.D. Ohio Civ. R. 83.2(a); Judge Shanahan's interpretation of Local Rule 33 was consistent with the deputy sheriffs' enforcement of the rule; the Sixth Circuit has affirmed a contempt finding in a case where the United States marshals enforced a local rule in the same manner as Hogan and Nobles allegedly did (*United States v. Prince*, 526 F. App'x 447 (6th Cir. 2013)); there is no case law finding this Court's Local Rule 83.2(a) or similar rules in other state courts to be unconstitutional; and courts have held that it is appropriate to impose criminal sanctions and contempt findings for behavior that disrupts court proceedings. (Doc. 41 at 7-10; Doc. 60 at 6-8, citing, e.g., *Gessner v. Plummer*, No. 3:10-cv-223, 2011 WL 2712529, at *1 (S.D. Ohio June 1, 2011) (Report and Recommendation), *adopted,* 2011 WL 2711286 (S.D. Ohio July 13, 2011)). In their reply

memorandum, defendants address the merits of plaintiffs' claims that they violated plaintiffs' constitutional rights by singling them out for detention, arrest, and search and seizure of their iPads based on their race. (Doc. 60 at 1-2). Defendants suggest that plaintiffs cannot show they were similarly situated to white individuals who were permitted to video record events in the hallway because the public record shows "a large number of persons were credentialed to cover" the "hearing" on the date in question, but plaintiffs were not among the credentialed videographers. (*Id.*, citing Doc. 41-1, "Applications Requesting Permission to Broadcast, Televise, Photograph, Record Courtroom Proceedings").

Plaintiffs argue in response that they have adequately stated claims for deprivations of their constitutional rights by alleging they were arrested for using recording devices in the County Courthouse hallways where non-African-American individuals were using recording devices; they were arrested without a warrant or probable cause to believe they were committing a crime; and the seizure of their iPads and their arrests were racially motivated. Plaintiffs allege that defendants' actions violated their right to free speech under the First and Fourteenth Amendments (Count I) and defendants violated plaintiffs' rights under the Fourth and Fourteenth Amendments by subjecting plaintiffs to unreasonable searches and seizures (Count II), false arrests/unlawful detentions and false imprisonment (Count III) and malicious prosecution (Count V). (Doc. 51 at 18-21). Plaintiffs contend that defendants do not challenge their substantive constitutional rights on the merits in their motion for judgment on the pleadings or deny that those rights were clearly established at the time of their arrests and the seizure of their iPads; rather, defendants rely on Local Rule 33 and the applications they have attached to their motion to argue they are entitled to qualified immunity. Plaintiffs dispute that the Local Rule authorized defendants to arrest and prosecute them or confiscate their iPads. Plaintiffs also challenge the

relevance of the applications defendants have attached as exhibits to their motion (Doc. 41-1), alleging that those applications do not pertain to permission to record events outside courtrooms and in hallways of the County Courthouse.

Qualified immunity "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (citing *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)). Qualified immunity not only insulates government officials from individual liability for money damages, but also from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant raises a qualified immunity defense to a claimed constitutional violation, the plaintiff must satisfy a two-pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submissions, was the right clearly established at the time of the injury. *Id*. at 201. In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it when resolving an official's qualified immunity claim. *Pearson,* 555 U.S. 223.

When the defendants raise the qualified immunity defense, plaintiffs bear the burden of showing that defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Reilly v. Vadlamudi,* 680 F.3d 617, 623 (6th Cir. 2012)). At the pleading stage, plaintiffs carry their burden by alleging facts that state a plausible claim that the defendant's conduct violated a clearly-established constitutional right. *Id*. (citing *Wesley v. Campbell,* 779 F.3d 421, 428 (6th Cir. 2015)). Plaintiffs must plead facts that when viewed in

the light most favorable to them "make out a violation of a constitutional right so clearly

established in a particularized sense that a reasonable officer confronted with the same situation

would have known that his conduct violated that right." *Id.* (citing *Ashcroft v. al-Kidd,* 563 U.S.

731, 131 S.Ct. 2074, 2083-84 (2011)).

The qualified immunity analysis "must be undertaken in light of the specific context of

the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201. Showing that a right

is clearly established "do[es] not require a case directly on point, but existing precedent must

have placed the statutory or constitutional question beyond debate." *Middaugh v. City of Three*

*Rivers*, __ F.3d __, 2017 WL 1179375, at *5 (6th Cir. Mar. 29, 2017) (citing *Mullenix v. Luna*,

__ U.S. __, 136 S.Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 741). Clearly-established

law for qualified immunity purposes must be defined specifically and not "at a high level of

generality." *Id.* (citing *Mullenix*, 136 S.Ct. at 308) (quoting *al-Kidd*, 563 U.S. at 742). "The

dispositive question is 'whether the violative nature of *particular* conduct is clearly

established.'" *Mullenix*, 136 S.Ct at 308 (quoting *al-Kidd*, 563 U.S. at 742) (emphasis added by

*Mullenix*). The Sixth Circuit in *Middaugh* explained:

> It is important to note that *Mullenix* does 'not require a case directly on point,'
> 136 S.Ct. at 308, and 'the very action in question' need not have 'previously been
> held unlawful,' *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). For example, 'a
> general constitutional rule already identified in the decisional law may apply with
> obvious clarity to the specific conduct in question.' *Id.* at 741 (quoting *United
> States v. Lanier*, 520 U.S. 259, 271 (1997)). *Mullenix* does not undermine our
> circuit's longstanding holding that 'an action's unlawfulness can be apparent from
> direct holdings, from specific examples described as prohibited, or from the
> general reasoning that a court employs.' *Feathers v. Aey*, 319 F.3d 843, 848 (6th
> Cir. 2003).

*Middaugh*, 2017 WL 1179375, at *6.

Plaintiffs have satisfied their burden at the pleading stage to show that defendants Nobles

and Hogan are not entitled to qualified immunity on their claims brought under § 1983.

Plaintiffs allege in the amended complaint that the deputy sheriffs singled them out for arrest and search and seizure of their electronic recording devices in the hallways of the County Courthouse based on their race. Plaintiffs allege that defendants detained, searched, and arrested them while not stopping, detaining or arresting any members of the white media or other "non-black citizens" who were using "their individual news camera, iPad, or other electronic or digital mobile devices" and not searching or seizing their mobile devices. (Doc. 38, ¶¶ 3, 4, 24). Plaintiffs allege that defendants seized and searched their iPads and arrested them without a warrant and without probable cause. (*Id.*, ¶¶ 6, 22, 23, 47, 48, 52). Plaintiffs allege that defendants violated their First Amendment right to free speech by detaining them and seizing and searching their iPads without a warrant or probable cause. (*Id.*, ¶¶ 5, 43, 44). Plaintiffs further allege that defendants violated their Fourth and Fourteenth Amendment right to be free from malicious prosecution by charging them with misdemeanor offenses of disorderly conduct and failure to disclose identifying information and pursuing criminal proceedings on these charges knowing there was no factual or legal basis for the charges, which were ultimately dismissed. (*Id.*, ¶ 58). These factual allegations state a plausible claim to relief for violations of plaintiff's First, Fourth and Fourteenth Amendment rights.

Defendants ask the Court to take judicial notice of the "Applications Requesting Permission to Broadcast, Televise, Photograph, Record Courtroom Proceedings" (Doc. 41-1) and find that many individuals were "credentialed" at the June 25, 2014 hearing whereas plaintiffs were not. (Doc. 60 at 1-2). While the Court can consider the applications as part of the *Hunter* case record, the applications are not dispositive of defendants' qualified immunity defense. The scope of the applications is unclear. The applications request permission to record "Courtroom Proceedings." (Docs. 41-1). The applications on their face are limited to "judicial proceedings

in the [*Hunter*] case" and do not reference either ancillary areas or activities outside of the courtroom. Thus, construed in plaintiff's favor for purposes of defendants' motion, the applications do not permit a finding that plaintiffs and other individuals who were recording events in the County Courthouse hallway at the same time and in the same manner were not similarly-situated.

Further, defendants have failed to show that "the violative nature of [the] *particular* conduct" alleged by plaintiffs was not clearly established at the time of the events in question. *Mullenix*, 136 S.Ct at 308. Defendants should have known in June 2014 that prohibiting similarly-situated African-American individuals from recording events in the County Courthouse hallway while allowing white individuals to do so, arresting plaintiffs without a warrant and without probable cause, seizing and searching their iPads without a warrant and without probable cause, and prosecuting them on charges they knew had no legal or factual basis were actions that violated clearly-established law. The sources defendants cite to show the applicable law was not clearly established on the date in question do not support defendants' position. Defendants rely on Local Rule 33's prohibition on recording devices "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court). . . ." and Judge Shanahan's October 25, 2016 entry in the *Tensing* case defining "ancillary area" under Local Rule 33(D)(6) for purposes of that case. (Doc. 33 at 12). Defendants argue that Judge Shanahan's entry provides the only interpretation of the Local Rule, and her interpretation is "that the prohibition on camera use always extends from the courtroom to all ancillary areas." (Doc. 60 at 6). On its face, Judge Shanahan's entry does not interpret Local Rule 33 as applied to all County Courthouse proceedings. Rather, Judge Shanahan expressly defined "ancillary area" under Local Rule 33(D)(6) "for purposes of the trial [in the *Tensing* case before her]" and

she restricted the definition of ancillary area to "all hallways on the fifth floor of the Courthouse." (Doc. 33 at 12). It therefore is not clear from the entry submitted by defendants, which post-dates plaintiffs' arrest for recording events in the hallways of the County Courthouse by more than two years, how "ancillary area" was defined under the Rule on that date, by the judge in the *Hunter* case, and for purposes of the *Hunter* case. Nor have defendants pointed to any other materials in the record showing that video recording in the hallways of the County Courthouse was prohibited on the date in question. Plaintiffs allege in the amended complaint that the presiding judge in the *Hunter* case had not prohibited the use of electronic devices in the hallways of the County Courthouse as of June 2014. (Doc. 38, ¶ 2). Because this issue is disputed, the Court cannot find in connection with the motion for judgment on the pleadings that the use of electronic devices for recording purposes was prohibited in the hallways under the County Courthouse rules in effect at the time of plaintiffs' arrest.

Moreover, resolution of this issue is not dispositive of plaintiffs' claim that they were arrested and searched and their iPads were seized and searched while white individuals who were engaged in identical conduct were not subjected to the same treatment. A reasonable law enforcement officer would have known that enforcing the law in the discriminatory manner alleged by plaintiffs would violate their federal constitutional rights. *See Gessner*, 2011 WL 2712529, at *8 ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws'" which "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly" and "cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference") (quoting *Vacco v. Quill,* 521 U.S. 793, 799 (1997); *Village of*

*Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005)).  Thus, neither Local Rule 33 nor Judge Shanahan's October 2016 entry in the *Tensing* case defining "ancillary area" for purposes of that case is dispositive of the qualified immunity issue.

Defendants also rely on this Court's Local Rule prohibiting electronic recording devices in the federal courthouse to argue that a reasonable person would not have known that the County Court's "substantially identical" rule, or enforcement of the rule against plaintiffs, was unconstitutional.  *See* S.D. Ohio Civ. R. 83.2.[8]  However, plaintiffs do not appear to challenge the constitutionality of Local Rule 33 itself.  Further, plaintiffs challenge the search and seizure of their iPads as allegedly occurring without a warrant or probable cause.  The similarities between Rule 83.2 and Local Rule 33 do not shed light on whether the deputy sheriffs reasonably believed they had probable cause to arrest plaintiffs, preclude them from recording events of public import in the hallways of the County Courthouse and disseminating that information, and seizing and searching their iPads without a warrant, while allowing white individuals to engage in the same recording activities unhindered.

Defendants also cite case law in support of their position that plaintiffs did not have a clearly-established right to use their electronic devices to record and photograph events in the hallways of the County Courthouse.  *See Gessner,* 2011 WL 2712529, at *8; *U.S. v. Prince,* 526 F. App'x  447 (6th Cir. 2013).  Those cases are not relevant to defendants' claim of qualified

---

[8] Rule 83.2 states:

> (a) No person may, without permission of the Court, operate an audio or visual recording device on any floor of a United States courthouse where judicial proceedings are being conducted.  No person may, without permission of the Court, operate an audio or visual recording device within courtrooms, chambers, and ancillary portions of state courthouses or other buildings while in use by this Court under agreement with local authorities.  Audio or visual recording devices in the possession of a person entering a building in which judicial proceedings are being conducted by this Court must, upon request, be turned over to security personnel for safekeeping and may be retrieved when leaving the building.

immunity at this stage of the lawsuit. The cited cases show that courts have long had the authority to "punish with contempt sanctions those who disrupt court proceedings." *Gessner*, 2011 WL 2712529, at \*8 (citing Ohio Rev. Code § 2705.01: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."). *See also Prince*, 526 F. App'x 447 (finding that "the violated direction or order must first be clear and specific" to support a contempt conviction and holding that the evidence there was sufficient to support a criminal conviction for contempt because the defendant "intentionally or deliberately" violated a court order to deactivate or turn off a cell phone in a court room during a sentencing despite posted courthouse signs to turn off cell phones and a deputy's "explicit instruction" to the defendant to turn his cell phone off). Insofar as defendants suggest that their actions were reasonable because they were taken to preserve order in the courtroom or prevent the disruption of court proceedings, the amended complaint presents a different version of the facts. Resolution of the underlying factual issues is not possible at the pleading stage. Thus, case law establishing a court's authority to preserve order in the courtroom and to punish offenders does not show that defendants' actions were lawful.

Plaintiffs have carried their burden to show that defendants are not entitled to qualified immunity. Taken in the light most favorable to plaintiffs, the facts alleged show that (1) defendants' conduct violated plaintiffs' constitutional rights, and (2) those rights were clearly established at the time of plaintiffs' injury. *Saucier*, 533 U.S. at 200-201. Defendants' motion for judgment on the pleadings as to plaintiffs' federal claims on qualified immunity grounds is denied.

### F. Plaintiffs' state law claims

Plaintiffs' amended complaint alleges two state law claims: (1) negligent and intentional infliction of emotional distress (Count VIII), and (2) invasion of privacy (Count X). (Doc. 38). Defendants' motion for judgment on the pleadings does not address these two state law claims. Defendants therefore are not entitled to judgment on the pleadings on these claims.

### G. Plaintiff Corbin's claims are not moot

Defendants contend that plaintiff Corbin's claims are moot because he requests no relief in the amended complaint. (Doc. 41 at 13). Defendants refer to the "Prayer for Relief" in the amended complaint, which mentions only plaintiff Enoch by name. (Doc. 38 at 18). Plaintiff Corbin denies that his claims are moot and asserts that he alleges injury in each count of the amended complaint. (Doc. 51 at 21).

Although the Prayer for Relief is not precise, it is clear from the amended complaint that plaintiff Corbin has not abandoned his claims for relief and that he seeks compensation for his alleged injuries. His claims therefore are not moot and he may proceed with his claims against defendants in accordance with the terms of this Order.

## IT IS THEREFORE ORDERED THAT:

1. Defendants Wolfzorn, Knight, Ferguson and Horton's motion to dismiss (Doc. 41) is **DENIED** as moot.

2. Defendants' motion for judgment on the pleadings (Doc. 41) is **GRANTED** as to:

   - Plaintiffs' claims against all defendants under Count IV - Excessive Force-Fourth Amendment; Count VII - State Law Claim: Malicious Prosecution; Count IX - State Law Claim: False Imprisonment/False Arrest; and Count XI - State Law Claim: Assault and Battery.

- Plaintiffs' claims against defendant Neil in his individual capacity.

3. Defendants' motion for judgment on the pleadings is **DENIED** as to:

- Plaintiffs' § 1983 claims against defendant Neil in his official capacity and defendants Hogan and Nobles in their individual capacity under Count I - Violation of Free Speech Rights-First and Fourteenth Amendments; Count II - Violation of Fourth Amendment Rights; Count III - False Arrest/Unlawful Detention/False Imprisonment-Fourth Amendment; and Count V - Malicious Prosecution-Fourth and Fourteenth Amendments.

- Plaintiffs' claim against defendant Neil in his official capacity under Count VI - Ratification-Fourth and Fourteenth Amendments.

- Plaintiffs' claims under Count VIII - State Law Claim: Negligent and Intentional Infliction of Emotional Distress, and Count X - State Law Claim: Invasion of Privacy.

Date: _5/18/17_

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge