# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

VANESSA ENOCH, *et al.*,　　　　　　　Case No. 1:16-cv-661
　　　Plaintiffs,　　　　　　　　　　Litkovitz, M.J.

　　　vs.

HAMILTON COUNTY　　　　　　　　**ORDER**
SHERIFF'S OFFICE, *et al.*,
　　　Defendants.

Plaintiffs Vanessa Enoch and Avery Corbin bring this action under 42 U.S.C. § 1983 for alleged violations of their civil rights and for alleged tort violations under Ohio common law. Plaintiffs seek injunctive relief and civil damages. The claims arise out of plaintiffs' warrantless arrests and searches and seizures of their electronic recording devices by defendants in the hallways of the Hamilton County, Ohio Courthouse. Defendants are the Hamilton County Sheriff's Office; Hamilton County Sheriff Jim Neil in his official capacity only; and Hamilton County Deputy Sheriffs Hogan and Nobles ("deputies") in their official and individual capacities. The matter is before the Court on (1) "County Defendants' Motion to Dismiss and Motion for Summary Judgment on Plaintiffs' Remaining Claims" (Doc. 112), plaintiffs' response in opposition (Doc. 115), and defendants' reply in support of their motion (Doc. 118).

## I. Factual background

The factual background in the case was summarized by the Sixth Circuit and will be restated here:

> In 2014, Enoch and Corbin visited the county courthouse in Hamilton County, Ohio to attend a pretrial hearing in the criminal prosecution of Tracie Hunter, a local juvenile court judge. Corbin was a bailiff for Judge Hunter before she was removed from the bench. Enoch was in court that day conducting a case study of the prosecution of Judge Hunter. At the conclusion of the day's proceedings, Enoch and Corbin exited the courtroom and, using their iPads, began taking videos and photos in the hallway.

Enoch and Corbin stood with others congregated outside the courtroom. When Kimball Perry, a reporter for the *Cincinnati Enquirer*, exited the courtroom, Corbin pointed the iPad towards Perry. As Perry walked down the hallway and turned down a different hallway, Corbin followed, taking pictures of and video recording the reporter. Perry then called out to the Deputies—here, acting as court security officers—that Corbin was taking pictures in the hallway. All the while, Enoch was also taking pictures on her iPad. The Deputies responded to the commotion. Deputy Hogan ordered Corbin and Enoch to stop recording and to turn off their devices, insisting that a local court rule prohibited photography or video recording anywhere in the courthouse. The Deputies also demanded that Corbin and Enoch provide photo identification. After Corbin did so, he argued with the Deputies that he was permitted to take pictures and record videos in the hallway because the judge only prohibited photography *inside* the courtroom, not in the hallways.

While the Deputies were discussing Corbin's conduct that had led to the commotion, Corbin took out his iPad again to take a picture of the courtroom door. On the door was posted a notice stating that "use of cell phones, pagers, cameras, electronic devices are prohibited without permission of the Court." R. 84-11 at PageID 1236.

Local Rule 33(D)(6) prohibits recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." Hamilton Cty. Common Pleas Court R. 33(D)(6). Judge Nadel, who presided at the Hunter trial, gave an instruction in his courtroom pursuant to Rule 33(D)(6), but did not reference "hallways" in those instructions. However, when deposed in this case, Judge Nadel testified that "the hallway" was an "adjacent area[ ]" that was "ancillary to the courtroom" and that he thought that this understanding was implicit in his order. Neither Hogan nor Nobles had seen an order from Judge Nadel defining "ancillary areas" to include the hallways of the courthouse.

The Deputies charged both Corbin and Enoch for disorderly conduct under Ohio Rev. Code § 2917.11. Enoch also was charged with failure to disclose information under Ohio Rev. Code § 2921.29, on the basis that she had refused to identify herself. The Deputies later testified that they arrested the pair for taking photographs in violation of Local Rule 33(D)(6). All charges were subsequently dismissed.

Enoch and Corbin filed this suit under 42 U.S.C. § 1983 alleging First and Fourth Amendment claims and pendent state-law claims against Deputies Hogan and Nobles, the Hamilton County Sheriff's Office, and County Sheriff Jim Neil, along with four other employees of the Sheriff's Office who have since been dismissed. As part of their claims, Enoch and Corbin maintained that they were singled out and arrested because they were African American. Although several other individuals—most of them white—were using cameras and other recording devices

in the hallways, they were not prohibited from doing so by the Deputies, and none of them were arrested.

*Enoch v. Hamilton Cty. Sheriff's Off.*, 818 F. App'x 398, 400-01 (6th Cir. 2020) (footnote omitted).

## II. Procedural background

This case has a long procedural history and is before this Court after two appeals to the United States Court of Appeals for the Sixth Circuit and two remands. The operative complaint is an amended complaint filed on January 6, 2017. (Doc. 38). This Court granted defendants' motion for judgment on the pleadings, in part, on plaintiffs' claims against defendant Neil in his individual capacity and plaintiffs' claims against all defendants based on excessive use of force (Count IV), malicious prosecution under state law (Count VII), false imprisonment and false arrest under state law (Count IX), and assault and battery under state law (Count XI). (Doc. 61; *Enoch v. Hamilton County Sheriff's Off.*, No. 1:16-cv-661, 2017 WL 2210515 (S.D. Ohio May 5, 2017), *aff'd and remanded sub nom. Enoch v. Hogan*, 728 F. App'x 448 (6th Cir. 2018). This Court denied defendants' motion for judgment on the pleadings on plaintiffs' remaining claims, including (1) plaintiffs' § 1983 claims against defendant Neil in his official capacity and against the deputies in their individual capacity alleging a violation of free speech under the First and Fourteenth Amendments (Count I), unreasonable search and seizure under the Fourth Amendment (Count II), false arrest/unlawful detention/false imprisonment under the Fourth Amendment (Count III), and malicious prosecution under the Fourth and Fourteenth Amendments (Count V); (2) plaintiffs' § 1983 claim against defendant Neil in his official capacity based on "ratification" under the Fourth and Fourteenth Amendments (Count VI); and (3) plaintiffs' state law claims for negligent and intentional infliction of emotional distress (Count VIII) and invasion of privacy (Count X). (*Id.*). This Court found that defendants Hogan

3

and Nobles were not entitled to qualified immunity from liability in their individual capacity on these claims.

## A. *Enoch I*

Defendants filed an interlocutory appeal on the issue of qualified immunity on May 31, 2017. (Doc. 64). The Sixth Circuit Court of Appeals affirmed this Court's order on appeal in a decision issued on March 23, 2018. *Enoch v. Hogan*, 728 F. App'x 448 (6th Cir. 2018) (*Enoch I*). The Sixth Circuit first found that defendants were not entitled to qualified immunity with regard to plaintiffs' claims of Fourth Amendment violations based on unreasonable search and seizure, false arrest, and malicious prosecution. *Id*. at 455. The deputies raised only one defense to these claims on appeal - that they were enforcing Local Rule 33(D)(6) of the Hamilton County Court of Common Pleas, which prohibits recording in the courthouse hallway without prior permission - and the Sixth Circuit found there was a factual issue as to whether the Rule prohibited the conduct that was the basis for plaintiffs' arrests.[1] *Id*. at 453-54. Further, because

---

[1] At all relevant times, Local Rule 33(D)(6)(a) read:

> Unless otherwise permitted in accordance with Rule 30 of these Local Rules, the operation of any cellular or portable telephone, camera (still or video), pager, beeper, computer, radio, or other sound or image recording or transmission device is prohibited in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court. All such devices must be turned off in the above-listed areas at all times.

*Enoch*, 2019 WL 1755966, at *3. The cross-referenced Rule 30, titled "Media Coverage of Court Proceedings," provided at Subsection A:

> Requests for permission to broadcast, televise, photograph, or otherwise record proceedings in the courtroom shall be made in writing to the Judge or the Judge's designated courtroom employee. Such a request shall be made on the appropriate application form available through the Court Administrator. Such applications should be made as far in advance as is reasonably possible but in no event later than 30 minutes prior to the courtroom session to be recorded. The Judge involved may waive the advance notice provision for good cause. All applications shall become part of the record of the proceedings.

*Id.*

plaintiffs had alleged facts indicating defendants lacked probable cause to arrest and prosecute plaintiffs, and because it was clearly established that arrest and prosecution without probable cause are unconstitutional, the Sixth Circuit found plaintiffs had plausibly alleged violations of their clearly established Fourth Amendment rights.  *Id*. at 454-55.

Second, the Sixth Circuit determined that plaintiffs had stated a plausible claim for a violation of their clearly established First Amendment rights.  *Id*. at 455-57.  Accepting for purposes of the motion plaintiffs' allegations that they had violated no rule or law, the Sixth Circuit found that to "constitutionally prevent [plaintiffs] from or punish them for gathering news about matters of public importance" violated their clearly established constitutional rights. *Id*. at 456.  The Court found that it had been clearly established for some time that:

> [T]he First Amendment protects the rights of both the media and the general public to attend and share information about the conduct of trials, "where their presence historically has been thought to enhance the integrity and quality of what takes place." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 578 (1980).  The Court linked the right of access to another fundamental First Amendment right, explaining that "[t]he explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily." *Id.* at 576-77.  The same logic necessitates finding a constitutional violation in this case, where Enoch and Corbin's access to a press conference held immediately after a hearing was foreclosed on the basis of their race.

*Id*.  The Sixth Circuit also found it has long been established that while a state or instrumentality may regulate the use of its public facilities, "state officials may not enforce rules or regulations that implicate First Amendment rights in a racially discriminatory manner." *Id.* (citing *Brown v. Louisiana*, 383 U.S. 131, 143 (1966)).  The Sixth Circuit determined that on the facts alleged, "state officials purported to enforce state law in a racially discriminatory manner, stopping and arresting black citizens for engaging in behavior that was both protected by the First Amendment and permitted for their white counterparts." *Id.*  The Sixth Circuit concluded that plaintiffs

plausibly alleged violations of their clearly established First and Fourth Amendment rights; affirmed this Court's denial of qualified immunity; and remanded the case for further proceedings consistent with its opinion. *Id*. at 457; *see also* Docs. 66, 68.

The following claims alleged in the amended complaint (Doc. 38) remained pending after *Enoch I*: (1) a First Amendment claim for violation of plaintiffs' right to free speech based on their detention/arrest and search and seizure of their electronic devices, which plaintiffs allege occurred without a warrant or probable cause (Count I); (2) a Fourth Amendment claim for violation of plaintiffs' right to be free from unreasonable searches and seizures based on the alleged search and seizure of plaintiffs and their personal belongings, which plaintiffs allege occurred without a warrant or probable cause (Count II); (3) a Fourth Amendment claim for false arrest and false imprisonment (Count III); (4) a Fourth Amendment claim for malicious prosecution based on defendants' acts of charging plaintiffs with criminal offenses and pursuing criminal prosecutions despite allegedly knowing there was no factual or legal basis for the charges (Count V); (5) Fourth and Fourteenth Amendment claims against defendants Neil and Hamilton County for ratifying the defendant deputies' allegedly unconstitutional acts by failing to investigate their conduct or take any remedial or disciplinary action against them (Count VI); (6) a state law claim for negligent and intentional infliction of emotional distress (Count VIII); (7) a state law claim for invasion of privacy based on the search of plaintiff Enoch's iPad (Count X); and (8) a claim for punitive damages against each of the individual defendants for committing the acts described in the complaint in willful, wanton, and reckless disregard of plaintiffs' rights (Count XII).

**B. Post-*Enoch I* remand proceedings**

After the case was remanded, the parties filed motions for summary judgment/partial summary judgment. (Docs. 83, 84). The undersigned denied defendants' motion for summary judgment in all respects and granted plaintiffs' motion for partial summary judgment on plaintiffs' First and Fourth Amendment claims (Counts I, II, and III), again denying qualified immunity to the defendant deputies. (Doc. 101). *Enoch v. Hamilton Cnty. Sheriff's Off.*, No. 1:16-cv-661, 2019 WL 1755966 (S.D. Ohio Apr. 19, 2019), *aff'd in part, rev'd in part, dismissed in part,* 818 F. App'x 398 (6th Cir. 2020). The deputies once again appealed the denial of qualified immunity on plaintiffs' First and Fourth Amendment claims and the denial of state-law immunity to all defendants, and defendants appealed the denial of summary judgment on plaintiffs' claims against them in their official capacity. On appeal, the Sixth Circuit reversed this Court's denial of qualified immunity to the deputies on all First and Fourth Amendment claims (Counts I, II, III, V, and VI); reversed the grant of summary judgment to plaintiffs on certain First and Fourth Amendment Claims (Counts I, II, III, and V); affirmed the denial of state-law immunity on the claims under Ohio law (Counts VIII and X); and dismissed defendants' interlocutory appeal as it pertained to claims against them in their official capacity (Count VI). *Enoch,* 818 F. App'x at 407 (*Enoch II*). The Sixth Circuit ruled that the deputies were entitled to qualified immunity on plaintiffs' Fourth Amendment claims for wrongful arrest and malicious prosecution and plaintiffs' First Amendment claims for retaliatory arrest; the deputies were not entitled to state-law immunity on plaintiffs' state tort claims; and the question of official capacity liability was not before the court on appeal.

**C. Post-*Enoch II* remand proceedings**

Following remand by the Sixth Circuit for further proceedings, defendants filed a motion

to dismiss/motion for summary judgment on plaintiffs' remaining claims. (Doc. 112). That motion is now before this Court. Defendants argue that there are three claims remaining in this case: Count VI (Ratification), Count VIII (Negligent and Intentional Infliction of Emotional Distress), and Count X (Invasion of Privacy). Defendants argue that plaintiffs' ratification claim should be dismissed because plaintiffs' arrests were supported by probable cause and did not violate their constitutional rights. (*Id*. at PAGEID 1992-1993). Defendants argue that plaintiffs' claims for negligent and intentional infliction of emotional distress should be dismissed because the deputies acted reasonably and with probable cause, and plaintiffs have not demonstrated they suffered physical injury. (*Id*. at PAGEID 1995-1996). Finally, defendants assert that plaintiff Enoch's claim for invasion of privacy should be dismissed because Enoch's arrest and the search of her iPad were supported by probable cause. (*Id*. at PAGEID 1994-1995).

Plaintiffs argue in response that their official capacity claims under the Fourth and First Amendments survive *Enoch II*'s ruling granting qualified immunity to the defendant deputies, and those claims should proceed to trial. (Doc. 115 at PAGEID 2009). Plaintiffs allege that in finding the deputies were entitled to qualified immunity, the Sixth Circuit made no findings as to whether there was probable cause for plaintiffs' arrests and whether any underlying Fourth Amendment violation occurred; the court "made it clear that the record demonstrated an underlying First Amendment violation"; and the court affirmed that plaintiffs' constitutional rights were violated pursuant to a common practice of the County. (*Id*. at PAGEID 2009- 2022). Plaintiffs contend that the Sixth Circuit's findings do not preclude them from establishing on remand that the deputies violated their First and Fourth Amendment rights and can be held liable in their official capacity for those violations. Plaintiffs also contend there are questions of fact that preclude judgment as a matter of law in defendants' favor on plaintiffs' claims for negligent

and intentional infliction of emotional distress and invasion of privacy. (*Id*. at PAGEID 2020-2024).

In reply, defendants argue that plaintiffs' opposing memorandum is based on a "fatally-flawed reading" of the Sixth Circuit's opinion, which purportedly found that (1) Nobles and Hogan "acted with probable cause," and (2) plaintiffs "suffered no violation of their constitutional rights." (Doc. 118 at PAGEID 2029). Defendants argue that because there was no constitutional violation, plaintiffs' official capacity claim for violation of their Fourth Amendment rights must fail. (*Id*. at 2031). Defendants further contend that plaintiffs' official capacity claim for violation of their First Amendment rights should be dismissed because the Sixth Circuit found the alleged violation was not properly pled as an equal protection claim; it was not supported by the absence of probable cause; and to the extent an exception to the absence of probable cause requirement applies, it is inapplicable in this case. (*Id*. at PAGEID 2033). Finally, defendants argue that because the deputies' conduct was objectively reasonable, these defendants are entitled to state-law immunity on their Ohio tort claims. (*Id*. at PAGEID 2035; Doc. 112 at PAGEID 1997-98).

### D. Resolution of defendants' post-*Enoch II* remand motion

#### 1. Plaintiffs' Fourth Amendment claims

Plaintiffs' Fourth Amendment claims against defendants Nobles and Hogan in their individual capacity (Counts I, II, III, and V) do not survive the Sixth Circuit's decision in *Enoch II*. However, plaintiffs argue that their claims against the deputies in their official capacity (i.e., against Hamilton County[2]) survive because the Sixth Circuit did not "definitively hold there was

---

[2] The claims against the parties in their official capacity and against the Hamilton County Sheriff's Department are "in reality an official capacity claim against Hamilton County, the entity of which defendants are agents." *Enoch*, 2019 WL 1755966, at *24 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)).

no violation of Plaintiffs' Fourth Amendment rights" in granting the deputies qualified immunity. (Doc. 115 at PAGEID 2009). This Court disagrees and finds that plaintiffs' Fourth Amendment claims against the County must be dismissed.

A two-prong test applies to determine whether a defendant is entitled to qualified immunity on summary judgment:

> A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.

*Enoch II,* 818 F. App'x at 402-03 (quoting *Kovacic v. Cuyahoga Cnty. Dept. of Child. and Fam. Services,* 724 F.3d 687, 695 (6th Cir. 2013) (quoting *Morrison v. Bd. of Trustees,* 583 F.3d 394, 400 (6th Cir. 2009)). The qualified immunity doctrine "allows police officers 'breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (additional citation omitted)). The Sixth Circuit in *Enoch II* decided plaintiffs' Fourth Amendment claims under the first prong. The Court found that defendants Nobles and Hogan were entitled to qualified immunity because their conduct did not violate plaintiffs' Fourth Amendment rights.

The Sixth Circuit first considered plaintiff's wrongful arrest claim, which required plaintiffs to prove the defendant deputies had no probable cause to arrest plaintiffs. "An officer possesses probable cause when, at the moment the officer seeks the arrest, 'the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.'" *Enoch II*, 818 F. App'x at 403 (quotations and citations omitted).

The Sixth Circuit concluded there was no Fourth Amendment violation because the deputies had probable cause to arrest plaintiffs for violating Local Rule 33(D)(6). *Id*. The Court reasoned that the touchstone of probable cause is reasonableness, and a finding of reasonableness may nevertheless be based on a mistaken belief as occurred in this case. *Enoch II*, 818 F. App'x at 404 (citing *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (internal quotation omitted)). In *Enoch II,* the court of appeals acknowledged there was no formal order from Judge Nadel, the state court judge, defining the hallway outside of his courtroom as an "ancillary area" under Rule 33(D)(6). The court of appeals determined that despite the lack of a formal admonition from Judge Nadel prohibiting recording in the hallways of the courthouse under Rule 33(D)(6), it was nevertheless reasonable for the deputies to believe that Enoch and Corbin violated Rule 33(D)(6). *Id.* The court of appeals cited Deputy Hogan's testimony on his training that people are not allowed to film inside the courthouse without permission; Judge Nadel's belief that "it was implied that the hallways were included in Rule 33(D)(6)'s prohibition on recording in the courtroom"; and the unrebutted evidence showing the common practice in the courthouse was to treat the hallways as ancillary areas. *Id*. Because it was "reasonable for the Deputies to have believed" that "Rule 33(D)(6) applied to the hallways outside the courtroom," the court concluded there was no Fourth Amendment violation for a wrongful arrest of plaintiffs. *Id*. The finding of reasonableness by the court of appeals in this context necessarily implies that the court found probable cause sufficient for plaintiffs' arrests. The Sixth Circuit thus based its qualified immunity decision on the first prong of the analysis: that plaintiffs failed to establish a constitutional violation under the Fourth Amendment. Having found a reasonable basis for the deputies to believe plaintiffs were violating Rule 33(D)(6) by recording in the courthouse

hallway, the Sixth Circuit found sufficient probable cause for plaintiffs' arrests. *Id*. As a result, the Sixth Circuit determined the deputies were entitled to qualified immunity.

The Sixth Circuit next considered plaintiffs' malicious prosecution claim. The court stated that an essential element of a malicious prosecution claim under § 1983 is a lack of probable cause to prosecute. *Id.* at 404. The Court held that "Enoch and Corbin cannot show that there was a lack of probable cause, and so their malicious-prosecution claims fail as a matter of law." *Id.* at 405. Accordingly, the Sixth Circuit concluded that defendants were entitled to qualified immunity on this claim as well because there was "no underlying constitutional violation." *Id*.

Although the Sixth Circuit unequivocally found that defendants Nobles and Hogan had probable cause to arrest plaintiffs for violating Local Rule 33(D)(6) and therefore no Fourth Amendment violation occurred, plaintiffs argue that the Sixth Circuit (1) did not apply a probable cause standard to determine whether plaintiffs' arrests were lawful, and (2) did not find there was no underlying violation of plaintiffs' Fourth Amendment rights. (Doc. 115 at PAGEID 2010-2011, 2013). Plaintiffs argue that the Sixth Circuit did not consider whether the "facts and circumstances within the [deputies'] knowledge and of which [they] had reasonably trustworthy information" were sufficient "to warrant a prudent man in believing that the plaintiff[s] had committed or w[ere] committing an offense," as required to determine probable cause. (Doc. 115 at PAGEID 2010-11, citing *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015)). Plaintiffs argue that the Sixth Circuit instead applied a "qualified immunity" standard by considering the deputies' mistaken, subjective belief that plaintiffs' conduct violated Rule 33(D)(6) and finding the deputies did not commit a knowing violation of Local Rule 33(D). (*Id*. at PAGEID 2013). Plaintiffs contend that the Sixth Circuit essentially found no more than

"arguable probable cause" by "conceding that there was no violation of Rule 33, while granting qualified immunity based on the deputies' subjective belief that there was such violation." (*Id*.).

Plaintiffs further suggest that the Sixth Circuit "assumed" an underlying constitutional violation occurred when the court stated: "We agree that [Nobles and Hogan] had probable cause to arrest Enoch and Corbin for violating Rule 33(D)(6). **They therefore are entitled to qualified immunity on the wrongful-arrest claim**." (Doc. 115 at PAGEID 2014, citing *Enoch II*, 818 F. App'x at 403) (emphasis added by plaintiff). Plaintiffs indicate these findings are consistent with the law of qualified immunity because "'[w]here a Court reaches the issue of qualified immunity, it generally *assumes* that some underlying constitutional violation has been established." (*Id*.). Plaintiffs argue that had the court determined in *Enoch II* that there was no underlying constitutional violation, then the court would not have undertaken any further analysis to determine whether qualified immunity applied. (*Id*.). Instead, the court would have "simply found there was no Fourth Amendment violation" and "no qualified immunity analysis would be necessary." (*Id*., citing *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 767 (6th Cir. 2010); *Colorez v. City of Cincinnati*, 441 F. Supp. 3d 560, 574 (S.D. Ohio 2020) (court addressed first prong of two-part qualified immunity analysis and found that "[a]s the undisputed facts show that no [constitutional] violation occurred, any further discussion of qualified immunity is unnecessary, and thus unwarranted.")).

This Court disagrees with plaintiffs' interpretation of the Sixth Circuit's findings and decision in *Enoch II* and how they impact this Court's findings on remand. The Sixth Circuit did not "assume" in *Enoch II* that an underlying constitutional violation occurred, as plaintiffs claim. (*See* Doc. 115 at PAGEID 2014). Rather, the Sixth Circuit considered the record evidence and explicitly found that plaintiffs' arrests were supported by probable cause because the deputies

reasonably believed that Rule 33(D)(6) prohibited recording in the hallway outside Judge

Nadel's courtroom. *Enoch II*, 818 F. App'x at 404.[3]  The court found, "To be reasonable is not

to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government

officials, giving them 'fair leeway for enforcing the law in the community's protection.'"  *Id*. at

404 (citing *Heien*, 574 U.S. at 60-61) (in turn quoting *Brinegar v. United States*, 338 U.S. 160,

176 (1949)).  The Sixth Circuit found, based on the record before it, that "[Nobles and Hogan]

had probable cause to arrest Enoch and Corbin for violating Rule 33(D)(6)."  *Id*. at 403.  The

Sixth Circuit also found that because there was probable cause for the arrests, there was no

wrongful arrest in violation of the Fourth Amendment.  *Id.*  Having found that a constitutional

violation was not established, the Sixth Circuit concluded that defendants Nobles and Hogan

were entitled to qualified immunity on the wrongful arrest claims brought against them in their

individual capacity.  *Id*.[4]  The Sixth Circuit's findings and decisions are binding on this Court.

Consistent with those findings and conclusions, plaintiffs cannot show that their arrests and

seizures violated the Fourth Amendment.

---

[3] In finding there was probable cause, the Sixth Circuit relied on "the unrebutted evidence show[ing] that the common practice in the Hamilton County courthouse was to treat [the hallways] as [ancillary areas]."  *Enoch II*, 818 F. App'x at 404.  This evidence included Judge Nadel's deposition testimony regarding his subjective understanding of the meaning of "ancillary areas" and the order he issued in this matter, which defendants were not privy to at the time of plaintiffs' arrests, and  defendant Hogan's deposition testimony that "court security officers are trained that people are not allowed to film inside the courthouse without permission," which was not necessarily consistent with the terms of Local Rule 33(D).  *Id.*  This Court is bound by the Sixth Circuit's finding that there was "probable cause" for the arrests based on this evidence.  *Id.*

[4] This Court disagrees with plaintiffs' premise that the Sixth Circuit would not have undertaken any further analysis to determine whether qualified immunity applied if it in fact determined there was no underlying constitutional violation.  (Doc. 115 at PAGEID 2014).  The Sixth Circuit made clear that its jurisdiction was limited to reviewing the denial of qualified immunity to the officers, the issue on which its appellate jurisdiction was based, and that it lacked jurisdiction to determine the merits of plaintiffs' constitutional claims.  *Enoch II*, 818 F. App'x at 406 (citations omitted) ("Although we have jurisdiction to review a denial of qualified immunity so long as the appeal turns on questions of law, that authority does not extend to a routine denial of a motion for summary judgment.").

The cases plaintiffs cite do not support their arguments urging this Court to reach a different conclusion. The cases do not suggest that when a court reaches the qualified immunity issue, the court "generally *assumes*" that an underlying constitutional violation has been established. (*See* Doc. 115 at PAGEID 2014, citing *Est. of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 767 n.9 (6th Cir. 2010)). Nor do the cases suggest that the reviewing court will not make a qualified immunity finding if it determines there is no constitutional violation. (*Id*., citing *Colorez*, 441 F. Supp. 3d at 573-74; *Est. of Smithers*, 602 F.3d at 767 n.9). Whether the plaintiff has asserted or established a constitutional violation is one of the two prongs of the qualified immunity analysis. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). The court is free to address either prong of the two-part qualified immunity analysis first. *Id.* The court need not consider the second prong or engage in any further discussion of qualified immunity if the undisputed facts or evidence show that no constitutional violation occurred and the plaintiff loses on the merits. *See Colorez*, 441 F. Supp. 3d at 574 (court "elected to [first] address the [] question [of] whether any constitutional violation occurred" and found that because the undisputed facts showed no constitutional violation occurred, "any further discussion of qualified immunity is unnecessary, and thus unwarranted"); *Est. of Smithers*, 602 F.3d at 766-67 n. 9 (Sixth Circuit found it was unnecessary to reach immunity issues raised by the plaintiffs on appeal because "[a] finding that a constitutional violation occurred is required to deny defendants qualified immunity," and the court had determined that "plaintiffs have not shown facts sufficient to find that a constitutional violation occurred"). Though there are cases where a court might assume a constitutional violation or forego making a qualified immunity finding after determining that a constitutional violation did not occur, this is not one of those cases. Here, the Sixth Circuit elected to address the first prong of the qualified immunity analysis for plaintiffs'

Fourth Amendment claims, and the Court went on to make a qualified immunity determination after finding that no constitutional violation occurred because defendants "had probable cause to arrest Enoch and Corbin for violating Rule 33(D)(6)." *Enoch*, 818 F. App'x at 404. The Sixth Circuit did not "assume" a Fourth Amendment violation occurred.

*Enoch II* can only be read as holding that the defendant deputies were entitled to qualified immunity from liability on plaintiffs' Fourth Amendment claims because first, there was probable cause for plaintiffs' arrests, and second, no Fourth Amendment violation occurred. Plaintiffs nonetheless argue that their Fourth Amendment claims against the County remain pending. Plaintiffs argue that the Sixth Circuit found that their Fourth Amendment rights were violated because the deputies' actions were "inconsistent with Rule 33(D)(6)'s mandate that hallways and other 'ancillary areas' be specifically designated in the sole discretion of the Court." (Doc. 115 at PAGEID 2015, quoting *Enoch II*, 818 F. App'x at 400) (acknowledging that the presiding trial judge, Judge Nadel, and the rule itself "did not explicitly characterize the hallways as 'ancillary areas[s].'"). Plaintiffs allege that the Sixth Circuit granted the deputies qualified immunity because they did not commit a "knowing violation" of plaintiffs' rights, despite the lack of probable cause for plaintiffs' arrests. (Doc. 115 at PAGEID 2015). Plaintiffs further argue that the Sixth Circuit found the "County was the moving force behind the otherwise unconstitutional arrests of Plaintiffs" by virtue of a "common practice" that "authorized its officers to ban recording in [] the hallways . . . ." (*Id*. at PAGEID 2015-16, quoting *Enoch II*, 818 F. App'x at 404). Finally, plaintiffs contend that the Sixth Circuit's decision to not accept jurisdiction over the County's appeal shows that plaintiffs' Fourth Amendment claims against the individual defendants in their official capacity remain pending. (Doc. 115 at PAGEID 2016-2019). Plaintiffs argue that if there were no underlying Fourth Amendment violations, the Sixth

Circuit's resolution of plaintiffs' claims against defendants in their official capacity would have resolved the official capacity claims, and the Sixth Circuit would have been compelled to accept jurisdiction over the County's appeal. (Doc. 115 at PAGEID 2016, citing *Enoch II*, 818 F. App'x at 407). Plaintiffs argue that because the Sixth Circuit did not accept jurisdiction over the County's appeal, the Fourth Amendment claims necessarily have merit.

Although the Sixth Circuit dismissed plaintiffs' Fourth Amendment claims against defendants Nobles and Hogan in their individual capacity, the court of appeals found that it lacked appellate jurisdiction over the claims against defendants in their official capacity and did not address those claims. *Enoch II*, 818 F. App'x at 406-07. The court of appeals noted that it "may exercise pendant appellate jurisdiction over an otherwise-nonappealable issue 'only if the resolution of the *properly appealable issue* necessarily and unavoidably decides the nonappealable issue.'" *Id.* at 407 (emphasis added) (quoting *Turi v. Main St. Adoption Servs, LLP*, 633 F.3d 496, 502-03 (6th Cir. 2011)). The court reasoned that the municipal liability issue raised by defendants in the interlocutory appeal was not necessarily and unavoidably decided by the qualified immunity issues:

> [Defendants'] arguments concerning municipal liability *do not turn on whether a federal constitutional violation occurred*. Instead, they contest the district court's conclusion that their decisions "may *fairly be said to represent official policy*." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). This issue is not inextricably intertwined with the district court's denial of qualified immunity, and our resolution of the Deputies' qualified-immunity appeal does not necessarily resolve the municipal liability claim against the Sheriff's Office. *See Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 424 (6th Cir. 2007).

*Id.* at 407 (emphasis added). In other words, whether the deputies' decision to arrest plaintiffs represented the official policy of the County, for purposes of municipal liability, is not "inextricably intertwined" or coterminous with the constitutional issue of whether the deputies had probable cause to arrest plaintiffs.

The Sixth Circuit in *Lane* explained the circumstances under which the exercise of pendant appellate jurisdiction on a § 1983 claim of municipal liability is appropriate in an appeal alleging qualified immunity:

> Although not appealable as a "final decision" under 28 U.S.C. § 1291, an appellate court can exercise pendent appellate jurisdiction on a § 1983 claim alleging municipal liability where the municipality's motion for summary judgment is "inextricably intertwined" with the qualified immunity analysis properly before the Court. *Crockett v. Cumberland Coll.,* 316 F.3d 571, 578 (6th Cir. 2003). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal - that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Mattox v. City of Forest Park,* 183 F.3d 515, 524 (6th Cir. 1999) (quoting *Moore v. City of Wynnewood,* 57 F.3d 924, 930 (10th Cir. 1995)). In the § 1983 context, this condition is typically satisfied when the question of whether a constitutional violation occurred resolves the case against the defendants in their individual capacities and the case against the municipality's officers in their official capacities. *See, e.g., id.* at 523 ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right any more than the individual defendants can. The inquiry is precisely the same in both cases."); *Moore,* 57 F.3d at 930. But the Court lacks appellate jurisdiction to resolve issues affecting the municipality when the resolution of the qualified immunity inquiry does not conclusively determine the municipality's liability. *Crockett,* 316 F.3d at 579.

*Lane*, 490 F.3d at 423.

Here, as in *Lane*, this Court denied qualified immunity to the individual defendants on plaintiffs' Fourth Amendment claims, finding that plaintiffs had not shown a violation of their Fourth Amendment rights. *See Enoch II*, 818 F. App'x at 405; *see Lane,* 490 F.3d at 423. In contrast, defendants' appeal of the official capacity claim rested on whether the deputies' decisions "may fairly be said to represent official policy" – not whether a federal constitutional violation occurred. *Enoch II*, 818 F. App'x at 407. The Sixth Circuit declined to address on appeal whether the deputies' actions represented "official policy" of the County for purposes of municipal liability because that issue was not "inextricably intertwined" with whether the

deputies had probable cause to arrest plaintiffs, entitling them to qualified immunity. Because the Fourth Amendment qualified immunity issue raised on appeal "does not necessarily resolve the municipal liability claim against the Sheriff's Office," the Sixth Circuit found it was without jurisdiction to consider the issue raised by defendants on appeal. *Id*. at 407 (citing *Lane*, 490 F.3d at 423).

However, contrary to plaintiffs' argument, it does not follow from the Sixth Circuit's decision that plaintiffs' Fourth Amendment claims against defendants in their official capacity can and should proceed. Instead, pursuant to *Lane*, it follows from the Sixth Circuit's finding of no Fourth Amendment violation that liability cannot be imposed on defendants in their official capacity on the Fourth Amendment claims. The Sixth Circuit found unequivocally that there was probable cause for plaintiffs' arrests and there was no wrongful arrest, and defendants were therefore entitled to qualified immunity. The court in *Lane* acknowledged that in a situation like this, where there has been no violation of a constitutional right and the individual defendants are entitled to qualified immunity, then the city or county "cannot be held liable for violating that right any more than the individual defendants can." *Lane*, 490 F.3d at 423 (citing *Mattox,* 183 F.3d at 524). Rather, the qualified immunity analysis (i.e., the finding of no constitutional violation under the first qualified immunity prong) and official capacity inquiry "is precisely the same in both cases." *Id*. (citing *Moore,* 57 F.3d at 930). *Cf. Colorez*, 441 F. Supp. 3d at 573-74 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (counties may be sued under § 1983 only if plaintiffs show that the alleged violation of their federal rights occurred because of a county policy or custom; therefore, a threshold for county liability based on policy or custom is that a violation of a federal right occurred)). Thus, even though Nobles and Hogan acted pursuant to a "common practice" of the County in arresting plaintiffs, the County cannot be

held liable for a Fourth Amendment violation because the Sixth Circuit found one did not occur. *Enoch II*, 818 F. App'x at 405. Plaintiffs' Fourth Amendment claims against defendants in their official capacity must be dismissed.

## 2. Plaintiffs' First Amendment Claims

Plaintiffs argue that their First Amendment claims against the deputies in their official capacity (i.e., against Hamilton County) survive *Enoch II*. This Court agrees.

The Sixth Circuit in *Enoch II* analyzed plaintiffs' First Amendment claim as a retaliatory arrest claim based on punishing plaintiffs for gathering news about a matter of public importance when their actions did not violate any rules or law; a race-based retaliation claim premised on the singling out of plaintiffs, African Americans, for disparate treatment when other individuals were permitted to continue to record videos in the hallways; and a speech-based retaliation claim. *Enoch II*, 818 F. App'x 405-06.

The Sixth Circuit first determined that the deputies were entitled to qualified immunity on plaintiffs' First Amendment retaliatory arrest claim because the deputies had probable cause to arrest plaintiffs for violating Rule 33(D)(6), as explained in connection with plaintiffs' Fourth Amendment claim. (*See supra* at pp. 11-12).

Next, the court determined that plaintiffs failed to allege a proper race-based First Amendment retaliation claim because such claims must be brought under the Equal Protection Clause, which the plaintiffs failed to assert. *Id*. at 405.

On the speech-based retaliation claim, the court determined that at the time of plaintiffs' arrests, the law "'was not clearly established that an arrest supported by probable cause' like the arrests in this case, 'could violate the First Amendment.'" *Id*. at 406 (quoting *Reichle v. Howards*, 566 U.S. 658, 663 (2012)). The Sixth Circuit stated that the Supreme Court in *Nieves*

*v. Bartlett*, -- U.S. --, 139 S. Ct. 1715 (2019), "left open the possibility that a retaliatory-arrest claim could survive without a finding of the absence of probable cause if the plaintiff presented sufficient 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Id*. at 406 (quoting *Nieves*, 139 S.Ct. at 1727). As *Nieves* was decided after plaintiffs were arrested, its "principles . . . were *not clearly established law* at the time of the arrests." *Enoch II*, 818 F. App'x at 406 (emphasis added). Therefore, the Sixth Circuit determined that the defendant deputies were entitled to qualified immunity in their individual capacity based on the second prong of the qualified immunity analysis.

Defendants argue that similar to plaintiffs' individual capacity claim against defendants Nobles and Hogan, plaintiffs' official capacity claim against these defendants should be dismissed. Defendants argue that insofar as plaintiffs rely on the *Nieves* exception to the absence of probable cause requirement, plaintiffs have not presented objective evidence showing they were arrested "when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." (Doc. 118 at PAGEID 2033-34, quoting *Nieves*, 139 S.Ct. at 1727).

Defendants argue that unlike other individuals who were recording in the hallways of the Hamilton County Courthouse, plaintiffs "were in violation of a reasonable restriction on speech within a limited public forum" because they did not obtain permission from Judge Nadel to record in the hallway outside the courtroom. (*Id*. at PAGEID 2034). Defendants argue that plaintiffs admit they did not have permission to film in the hallways as required by Local Rule 30(A), whereas "the white individuals Plaintiffs refer to" were two representatives of the local media who had both "obtained permission pursuant to Local Rule 30(A) from Judge Nadel

beforehand to film the proceedings." (*Id*.). Defendants also argue that Local Rule 33(D) "prohibits filming of any kind *unless* permission is obtained from *the* judge," and the Sixth Circuit correctly found that Local Rule 33(d)(6) is a reasonable restriction on speech. (*Id*., citing *Enoch II*, 818 F. App'x at 405). Defendants contend that plaintiffs violated this "reasonable restriction on speech" and that "other individuals were arrested in the courthouse for similar violations before other judges" (*see* Doc. 83-1 at 1178-1182); therefore, the evidence does not support a finding that defendants used plaintiffs' apparent violation of Rule 33(D) as a pretext to retaliate against them for exercising their First Amendment rights. *Id*.

The Sixth Circuit's decision in *Enoch II* does not foreclose plaintiffs from pursuing their First Amendment claim for speech-based retaliation against defendants in their official capacity. There are genuine issues of fact as to whether plaintiffs can establish that the *Nieves* exception applies in this case. First, there are issues as to whether plaintiffs were similarly situated to other individuals who were recording in the hallway outside Judge Nadel's courtroom. Defendants allege that plaintiffs violated a "reasonable restriction on speech" by recording in the hallways of the Hamilton County Courthouse without permission, but they have not introduced evidence that supports their allegation. Neither the district court nor the Sixth Circuit has interpreted Rule 33(D) as prohibiting recording "of any kind," and specifically recording in the hallways of the Courthouse, unless permission is obtained from the presiding judge. (*See* Doc. 118 at PAGEID 2034). The Rule gives the presiding judge discretion to limit recording in "ancillary areas," which include the hallways, and it is the "common practice" of the courthouse to treat hallways as "ancillary areas." *See Enoch II*, 818 F. App'x at 404. But there is no evidence Judge Nadel exercised his discretion to include hallways as "ancillary areas" in this matter.

Nor have defendants shown that plaintiffs were the only individuals recording in the

hallways of the Courthouse who did not have the necessary permission. Defendants have submitted evidence that presumably shows all other individuals recording in the hallways had sought and obtained permission to do so. (*See* Doc. 118 at PAGEID 2034; Doc. 81-53 at PAGEID 1059-87). The evidence consists of several individuals' applications for permission to record "Courtroom Proceedings" or "judicial proceedings," which Judge Nadel granted. (Doc. 81-53 at PAGEID 1059-87). The applications do not reference recording in the hallways; they do not show that any individual obtained permission to record in the hallways; and they do not show that the individuals who obtained permission to film "Courtroom Proceedings" or "judicial proceedings" were recording events in the hallways outside Judge Nadel's courtroom at the same time as plaintiffs. (*Id.*).

Defendants also argue that the record shows that other individuals were arrested in the Courthouse for similar violations before other judges. (Doc. 118 at PAGEID 2034). But defendants have not produced evidence that shows these individuals were similarly situated to plaintiffs. The district court described this evidence in its prior order on defendants' motion for summary judgment:

> Defendants have submitted the Declaration of Gary Wolfzorn, a Sergeant with the Hamilton County Sheriff's Office, to show that individuals have been found in contempt and sentenced for violating the Rule. (Doc. 83-1, p. 1-5, PAGEID#: 1178). In his affidavit, Wolfzorn states he is "personally aware of numerous instances where individuals have been found in contempt of court for using devices to photograph people in the hallways," and he has attached two Court of Common Pleas entries "finding individuals in contempt and sentencing them to jail for violating the Court's policy." (*Id.*). The first contempt entry was issued by a Common Pleas judge against an individual who made a video recording of police officers who were witnesses in felony indictments, one of whom frequently worked in an undercover capacity. (*Id.*, Exh. A). The second contempt entry was issued by a Common Pleas judge against an individual who took a photograph of a sheriff's deputy escorting a defendant out of the courtroom against the direct order of the court. (*Id.*, Exh. B).

*Enoch*, 2019 WL 1755966, at \*21. Unlike these individuals, plaintiffs were not acting in violation of a direct court order, and there is no allegation that they attempted to record law enforcement officers serving as witnesses or performing functions related to courtroom proceedings. Defendants have not made any other allegations to show that plaintiffs' conduct was similar to the conduct of these two individuals who were held in contempt of court for violating court policy.

Thus, there are genuine issues of material fact as to whether plaintiffs and the other individuals recording in the Courthouse hallways at the time of plaintiffs' arrests were similarly situated. There is no evidence that any of these individuals had been granted permission to record in the hallways or that they were violating an admonition or order from Judge Nadel by doing so. Yet, plaintiffs were detained and arrested and the other individuals using recording devices in the hallways were not. Defendants have not offered a plausible explanation for this discrepancy that is supported by the evidence. In light of these factual issues, the Court cannot resolve on summary judgment whether the *Nieves* exception applies and a constitutional violation occurred; i.e., whether despite having probable cause to detain and arrest plaintiffs, defendants violated plaintiffs' First Amendment rights by singling them out for punishment.

Though plaintiffs cannot pursue their First Amendment claim against the defendant deputies in their individual capacity based on the *Nieves* exception, *Enoch II* does not foreclose plaintiffs from pursuing their official capacity claim for speech-based retaliation under the First Amendment. Plaintiffs can proceed under the theory that the deputies were enforcing an official policy or custom of the County when they arrested plaintiffs for recording events in the hallway of the Hamilton County Courthouse while other similarly situated individuals were not arrested.

The Sixth Circuit did not resolve the factual issues concerning the existence of a Sheriff's Office policy on appeal in *Enoch II,* and defendants have not introduced new evidence on remand that leads to a different conclusion on plaintiffs' official capacity claim than the district court reached in its prior order. Issues of fact remain as to whether the defendant deputies acted pursuant to a County policy when they arrested plaintiffs. Summary judgment on the official capacity claims against defendants Hogan and Nobles for violations of plaintiffs' First Amendment rights based on the *Nieves* exception is not warranted.

### 3. State law claims

Defendants seek summary judgment on the only state law claims that remain pending in this matter: plaintiffs' claims for negligent and intentional infliction of emotional distress (Count VIII) and plaintiff Enoch's claim for invasion of privacy based on the deputies' search of the contents of her iPad (Count X). (Doc. 112). These claims remained pending after the Sixth Circuit denied defendants' initial appeal at the motion to dismiss stage. On remand to this Court, defendants sought summary judgment on the ground they were entitled to state-law immunity under Ohio Rev. Code § 2744.03(A)(6). *See Enoch*, 2019 WL 1755966, at *26. Defendants claimed that because there was probable cause for plaintiffs' arrests, they could not have acted with a malicious purpose, in bad faith, or recklessly. This Court found that defendants were not entitled to state-law immunity and denied summary judgment on the claims for negligent/intentional infliction of emotional distress and invasion of privacy based on findings that (1) defendants did not have probable cause to arrest plaintiffs; (2) there were issues of fact as to whether "the search of [Enoch's] iPad by Nobles was consensual or coerced"; and (3) there was evidence showing that the African-American plaintiffs "were the only individuals who were arrested for filming or recording in the Courthouse hallways on June 25, 2014, while white

individuals were not," which provided a "sufficient basis for a jury to infer the requisite malicious purpose, bad faith, or wanton or reckless conduct on the part of defendants[.]" *Id.*

The Sixth Circuit upheld the district court's denial of state-law immunity on appeal on the third ground set forth in this Court's summary judgment order. *Enoch II*, 818 F. App'x at 406. The Sixth Circuit noted that "the district court suggested that the claims of racial discrimination would allow 'a jury to infer the requisite malicious purpose, bad faith, or wanton or reckless conduct on the part of the defendants,'" and defendants had forfeited any argument to the contrary by saying nothing in response on appeal. *Id.* (quoting *Enoch*, 2019 WL 1755966, at *26). The Sixth Circuit did not address the merits of plaintiffs' state law claims, which were not before it on appeal. However, defendants argue that the Sixth Circuit's decision in *Enoch II* forecloses plaintiffs from pursuing their claims for negligent and intentional infliction of emotional distress and invasion of privacy and that defendants are entitled to summary judgment as a matter of law. (Doc. 112). Defendants also argue that this Court should decline to exercise supplemental jurisdiction over the state law claims because the Sixth Circuit found the individual defendants are entitled to qualified immunity on all federal claims in the lawsuit. (Doc. 118 at PAGEID 2035, citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996)).

Generally, if all federal claims in a case are dismissed before trial, the court should also dismiss the state claims. *Hankins*, 84 F.3d 803 (citations omitted). But that rule does not apply here because this Court has found that plaintiffs are entitled to pursue their First Amendment speech-based retaliation claim against defendants Nobles and Hogan in their official capacity. (*See supra*). Therefore, the exercise of supplemental jurisdiction over plaintiffs' remaining state law claims is appropriate.

In the alternative, defendants argue that plaintiffs cannot pursue their claims for negligent and intentional infliction of emotional distress because plaintiffs cannot show (1) that defendants "intentionally or recklessly caused severe emotional distress through extreme and outrageous conduct," and (2) that plaintiffs suffered a requisite physical injury or "severe and debilitating" distress. (Doc. 112 at PAGEID 1995-96). Defendants argue that plaintiff Enoch cannot pursue a claim for invasion of privacy because her arrest and the search of her iPad were supported by probable cause, so there was no wrongful intrusion upon her private activities. (*Id*. at PAGEID 1994). Finally, defendants argue that because the Sixth Circuit found the defendant deputies are entitled to qualified immunity, the deputies and the County are necessarily entitled to statutory immunity under Ohio Rev. Code § 2744.03. (*Id*. at PAGEID 1997-1998). Defendants contend that Nobles and Hogan could not have acted "with malicious purpose, [in] bad faith, or [in a] wanton or reckless" manner if the deputies acted reasonably and with probable cause. (*Id*. at PAGEID 1998).

Plaintiffs argue in response that defendants are not entitled to summary judgment on their claims for negligent and intentional infliction of emotional distress because (1) the Sixth Circuit did not find that the deputies had probable cause to arrest plaintiffs or that their conduct was reasonable (Doc. 115 at PAGEID 2020-2021), and (2) the Sixth Circuit did not disturb this Court's prior finding that there is an issue of fact as to whether racial animus motivated plaintiffs' arrests, which would permit a jury to "infer the requisite malicious purpose, bad faith, or wanton or reckless conduct" from evidence of "racial animus." (*Id*. at PAGEID 2021, citing *Enoch*, 2019 WL 1755966, at *26). Plaintiffs suggest that conduct motivated by "racial animus" necessarily gives rise to an intentional infliction of emotional distress claim. (*Id*. at PAGEID 2021). Plaintiffs also allege they can produce evidence of emotional distress, and it is for the

jury to determine whether defendants' conduct caused plaintiffs "serious emotion[al] distress." (*Id*. at PAGEID 2021-22). Finally, plaintiffs argue that defendants are not entitled to state-law immunity under Ohio Rev. Code § 2744.03(A)(6)(b) because the Sixth Circuit "expressly rejected" defendants' argument that plaintiffs "failed to produce evidence that 'their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless'" manner, and the Sixth Circuit allowed this Court's prior Order denying state-law immunity to stand. (*Id*. at PAGEID 2023-2024).

      *i. Negligent and intentional infliction of emotional distress* (*Count VIII*)

      Ohio recognizes the tort of negligent infliction of emotional distress but limits recovery "to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." *Dunson v. Kodak Co.*, No. 3:08-cv-202, 2008 WL 4449265, at *2 (S.D. Ohio Sept. 30, 2008) (quoting *Gearing v. Nationwide Ins. Co.,* 76 Ohio St.3d 34, 40, 665 N.E.2d 1115 (1996) (citations omitted)). *See also Heiner v. Moretuzzo*, 652 N.E.2d 664, 668-69 (Ohio 1995). A claim for intentional infliction of emotional distress lies where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 453 N.E.2d 666, 671 (Ohio 1983)) (*overruled on other grounds*). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Yeager,* 453 N.E.2d at 671). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quoting *Yeager,* 453 N.E.2d at

671).  "Conduct that is merely cruel or insensitive does not reach the threshold of the sort of extreme and outrageous conduct that is necessary to establish a claim of intentional infliction of emotional distress."  *Hunt v. City of Toledo L. Dept.*, 881 F. Supp. 2d 854, 886-87 (N.D. Ohio 2012) (quoting *Roelen v. Akron Beacon Journal,* 199 F. Supp. 2d 685, 696 (N.D. Ohio 2002)).

Defendants argue that plaintiffs' claim for negligent and intentional infliction of emotional distress should be dismissed because *Enoch II* found that Nobles and Hogan acted reasonably and with probable cause, which precludes a finding that the deputies' conduct was "extreme" and "outrageous."  (Doc. 112 at PAGEID 1995-1996, citing *Atwell v. Hart*, 122 F. App'x 215 (6th Cir. 2005)).  Defendants also contend that plaintiffs cannot make the requisite showing that they suffered a physical injury or distress that was so severe or debilitating that a reasonable person would be unable to adequately cope with it.  (*Id*. at PAGEID 1996, citing *Hunt*, 881 F. Supp. 2d at 887 (citing *Paugh v. Hanks*, 421 N.E.2d 759, 765 (Ohio 1983)).

Defendants are entitled to summary judgment on plaintiffs' claims for negligent infliction of emotional distress.  Plaintiffs do not allege that they suffered emotional distress because they were bystanders to an accident or in fear of physical consequences to themselves.  *See Dunson*, 2008 WL 4449265, at *2.

Defendants are also entitled to summary judgment on plaintiffs' claims for intentional infliction of emotional distress based on the Sixth Circuit's findings in *Enoch II*.  A lawful detention and arrest "cannot give rise to a subsequent civil action against the detaining or arresting officer for inflicting emotional distress."  *Hale*, 267 F. Supp. 2d at 736-37.  At a minimum, the plaintiff must show that her "detention or arrest was both unlawful and undertaken in bad faith or the like. . . .'"  *Id*.  As discussed *supra*, the Sixth Circuit found that Nobles and Hogan's conduct in arresting plaintiffs was "not objectively unreasonable" and that it was

supported by probable cause. *Enoch II*, 818 F. App'x at 403, 405. The Sixth Circuit's findings are binding on this Court. Findings that defendants acted reasonably in effecting plaintiffs' arrests and had probable cause for the arrests are inconsistent with a claim that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hale*, 267 F. Supp. 2d at 736-37; *Yeager,* 453 N.E.2d at 671.[5]

Further, even assuming plaintiffs could show that the deputies' conduct was "extreme and outrageous," plaintiffs must produce evidence to show that their alleged "emotional injury was sufficiently serious" in order to proceed past the summary judgment stage. *Hunt*, 881 F. Supp. 2d at 887 (citations omitted). Plaintiff must show emotional distress "so serious that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Walsh v. AT&T Corp.*, No. 1:05cv00769, 2007 WL 2034426, at *11 (N.D. Ohio July 11, 2007), *aff'd sub nom. Walsh v. AT & T Corp.*, 310 F. App'x 8 (6th Cir. 2009) (quoting *Paugh,* 451 N.E.2d 759). Plaintiff must prove an emotional injury that is "both severe and debilitating." *Uebelacker v. Cincom Sys., Inc.*, 549 N.E.2d 1210, 1220 (Ohio App. 1st Dist. 1988) (citing *Paugh,* 451 N.E.2d at 765). Plaintiff must provide "[p]roof of serious emotional distress . . . in the form of expert medical testimony" or "the testimony of [l]ay

---

[5] For the same reason, the undersigned disagrees with plaintiffs' argument that this Court's prior summary judgment Order "establishes that the deputies' conduct was extreme and outrageous." (Doc. 115 at PAGEID 2021, citing *Enoch*, 2019 WL 1755966). In addressing defendants' defense of state statutory immunity, this Court found that evidence indicating that plaintiffs were arrested and their electronic recording devices were confiscated in a racially discriminatory manner would allow a jury to infer malicious purpose, bad faith, and wanton and reckless conduct, so as to vitiate state-law immunity. *Id.,* at *26. The Sixth Circuit held that defendants forfeited any argument challenging this finding by failing to address it on appeal and therefore upheld the denial of state-law immunity on plaintiffs' state law claims without addressing the substantive merits of those claims. *Enoch II*, 818 F. App'x at 406. However, given the Sixth Circuit's ruling that the deputies' actions were "not objectively unreasonable" under the circumstances and were supported by probable cause, *Id.* at 403, 405, which is binding on this Court, the undersigned cannot conclude that the deputies' actions necessarily constitute "extreme and outrageous" conduct for purposes of plaintiffs' intentional infliction of emotional distress claim.

witnesses acquainted with the plaintiff [who] may also testify to significant changes that they have observed in the emotional or habitual makeup of the plaintiff." *Id.* (citing *Paugh,* 451 N.E.2d at 765).

Plaintiffs have not offered sufficient evidence to support a finding that they suffered "severe and disabling emotional distress." Plaintiffs allege that "Enoch and Corbin can testify as to the other's emotional distress accompanying the arrest" because they both allege "emotional harm arising from the same events." (Doc. 115 at PAGEID 2022). But plaintiffs have not offered any evidence that either Corbin or Enoch has first-hand knowledge of the other's alleged psychic injury and can "testify to significant changes" that they have observed in the other's mental health. *Uebelacker*, 549 N.E.2d at 1220. Plaintiffs simply note that each plaintiff testified about their own feelings during their arrest, i.e., Corbin testified at his deposition that "being handcuffed to the bench made him feel like a dog" (Doc. 77 at PAGEID 761) and Enoch said that the incident made her feel like a "chained animal" (Doc. 81-49 at PAGEID 1045-1046). (Doc. 115 at PAGEID 2022). Further, plaintiffs' deposition testimony does not show that either plaintiff's feelings during the arrest led to a "psychic injury that is both severe and debilitating." *Uebelacker*, 549 N.E.2d at 1220.

The only other "evidence" plaintiffs offer to show that they suffered serious and debilitating psychic injury is Enoch's testimony that a minister at her church counseled her regarding the arrest. (Doc. 115 at PAGEID 2022, citing Enoch Depo., Doc. 78 at PAGEID 855). But the fact that plaintiff was counseled, absent any other details, gives no indication as to the seriousness of her psychic injury. The evidence sheds no light on whether Enoch suffered emotional distress "so serious that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Walsh,* 2007

WL 2034426, at *11.  Beyond this evidence, plaintiffs simply allege in response to defendants'

motion for summary judgment that Enoch's daughters can "testify to her emotional or habitual

changes following the arrest," and Corbin's family and mentee can testify to "his emotional or

habitual changes following the arrest."  (Doc. 115 at PAGEID 2022).  Plaintiffs have not

provided any affidavits or testimony from these lay witnesses, and their allegations that

individuals can testify as to certain matters is insufficient to carry their burden on summary

judgment.  Plaintiffs must come forward with facts based on "particular parts of materials in the

record," including depositions, documents, and affidavits, showing that there is a genuine issue

for trial.  Fed. R. Civ. P. 56(c).  *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*

475 U.S. 574, 586-87 (1986)*.*  Plaintiffs have failed to produce sufficient evidence to support

their claims of serious emotional distress.  *See Walsh*, 2007 WL 2034426, at *11 (plaintiff failed

to produce sufficient evidence of serious emotional distress where he provided only his own

deposition testimony and "neither expert nor lay witnesses who could attest to the allegedly

negative emotional impact of [defendant's] conduct" on plaintiff).  Accordingly, defendants are

entitled to summary judgment on plaintiffs' claim for intentional infliction of emotional distress.

    *ii.  Invasion of privacy*

    Under Ohio law, an "invasion of privacy must involve 'the unwarranted appropriation or

exploitation of one's personality, the publicizing of one's private affairs with which the public

has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner

as to outrage or cause mental suffering, shame or humiliation to a person of ordinary

sensibilities."  *Lunsford v. Sterilite of Ohio, L.L.C.*, 165 N.E.3d 245, 253 (Ohio 2020),

*reconsideration denied,* 155 N.E.3d 948 (Table) (Ohio 2020) (quoting *Housh v. Peth*, 133

N.E.2d 340, 341, syll. ¶ 2 (Ohio 1956)).  Plaintiffs allege in Count XI of the amended complaint

that plaintiff Enoch had an expectation of privacy in the contents of her iPad, the deputies

"intruded on that privacy" by seizing the iPad and searching its contents without probable cause,

and the "intrusion was and would be highly offensive to a reasonable person." (Doc. 38 at

PAGEID 182). Plaintiff Enoch alleges she suffered "emotional trauma, distress, humiliation, and

the loss of professional reputation and employment opportunities" as a direct and proximate

result of the seizure of her iPad and the search of its contents. (*Id*. at PAGEID 183).

Defendants seek summary judgment on this claim. (Doc. 112). They argue that where an

arrest is lawful, there can be no invasion of privacy in effecting it. (*Id*. at PAGEID 1994, citing

*Evans v. Detlefsen*, 857 F.2d 330, 338 (6th Cir. 1998) (citing *Simons v. Mntgmy. County Police

Officers*, 762 F.2d 30, 33 (4th Cir. 1985) ("If the arrest was lawful in the sense that it was

supported by probable cause, there can have been no invasion of privacy in effecting it."")).[6]

Defendants further argue that where there is probable cause for an arrest as there was here, there

is also a right to search the means by which the offense was committed. (*Id*. at PAGEID 1994-

1995). Defendants allege that because the Sixth Circuit found there was probable cause for

plaintiffs' arrests for violating Local Rule 33(D), they acted reasonably in searching Enoch's

iPad to determine if it had been used to violate Rule 33(D). (*Id*. at PAGEID 1995, citing *Agnello

v. U.S*., 269 U.S. 20, 30 (1925)).

Plaintiffs have not addressed the merits of their invasion of privacy claim in response to

defendants' motion for summary judgment. (Doc. 115). Plaintiffs address only defendants'

contention that they are entitled to state law immunity on plaintiffs' claim for invasion of

---

[6] *Evans* involved Tennessee state law. The Sixth Circuit applied the definition of "invading one's physical solitude or seclusion" from Restatement (Second) of Torts § 652B. *Evans*, 857 F.2d at 338. Ohio courts have also looked to this Restatement to define this tort. *See Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, at *18 (10th App. Dist. May 11, 2004) (quoting Restatement of the Law 2d, Torts (1977) 378, Section 652B)).

privacy.  (*Id*. at 2023-24).  Plaintiffs argue that the deputies had only a "mistaken belief that they had probable cause," and this Court's "original" summary judgment ruling on the issue of state-law immunity has been upheld by the Sixth Circuit and controls.  (*Id*. at PAGEID 2024).  Plaintiffs allege that in accordance with this Court's ruling, which holds there is sufficient evidence of discriminatory treatment of plaintiffs for a jury to "infer the requisite malicious purpose, bad faith, or wanton or reckless conduct on the part of defendants" so as to "vitiate statutory immunity in this case," defendants' are not entitled to state-law immunity and their motion for summary judgment must be denied.  (*Id*.).

Plaintiffs' invasion of privacy of privacy claim appears to be a "wrongful intrusion" type of claim.  A "wrongful intrusion" invasion of privacy" is "the wrongful intrusion into one's private activities . . . in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."  *Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, at *18 (10th App. Dist. May 11, 2004) (quoting *Haller v. Phillips*, 69 Ohio App.3d 574, 578, 591 N.E.2d 305 (1990)).  The "intrusion" is like a "trespass in that it involves intrusion or prying into the plaintiff's private affairs."  *Id*. (quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (1985)).  "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."  *Id*. (quoting Restatement of the Law 2d, Torts (1977) 378, Section 652B).  "The intrusion must be wrongful, as well as done in a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."  *Id*. (quoting *Strutner v. Dispatch Printing Co.*, 2 Ohio App.3d 377, 378, 442 N.E.2d 129 (1982)).  "The intrusion must be of such a character as would shock the ordinary person to the point of emotional distress";

thus, "the standard is similar to that applicable to claims of intentional infliction of emotional distress." *Id*. (quoting *Haller,* 69 Ohio App.3d at 578, 591 N.E.2d 305).

As discussed *supra*, the Sixth Circuit found there was probable cause for plaintiffs' arrests and their arrests were not unlawful. *Enoch II*, 818 F. App'x at 403, 405. Because the arrests were lawful and supported by probable cause, plaintiffs do not appear to have a valid claim for invasion of privacy against defendants for effecting the arrest. *See Evans*, 857 F.2d at 338. Further, plaintiffs have not introduced evidence to show there is a genuine issue of material fact on this claim. Plaintiffs have not pointed to any evidence in the record to indicate that the search of Enoch's iPad was conducted in a manner that would cause "outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Lunsford*, 165 N.E.3d at 253; *Roe*, 2004 WL 1109849, at *18. Plaintiffs' allegations that she had an expectation of privacy in the contents of her privacy, which the deputies violated by searching the contents of the iPad, are insufficient to withstand summary judgment on this claim.

**IT IS THEREFORE ORDERED THAT:**

The County defendants' motion to dismiss/motion for summary judgment (Doc. 112) is **GRANTED** as to (1) all remaining claims against defendants Nobles and Hogan in their individual capacity, and (2) all remaining official capacity claims against defendants Hamilton County Sheriff's Office, Hamilton County Sheriff Jim Neil, and Nobles and Hogan (which are construed as claims against Hamilton County), with the exception of plaintiffs' official capacity claim for speech-based retaliation under the First Amendment.

The County defendants' motion to dismiss/motion for summary judgment is **DENIED** as to plaintiffs' official capacity claim against Hamilton County for speech-based retaliation under the First Amendment.

Date:   6/1/2021

Karen L. Litkovitz
United States Magistrate Judge