UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VANESSA ENOCH, *et al.*,                                    Case No. 1:16-cv-661
    Plaintiffs,                                                       Litkovitz, M.J.

vs.

HAMILTON COUNTY SHERIFF,                      **ORDER**
    Defendant.

Plaintiffs initiated this civil rights action in 2016 challenging their arrests and the confiscation of their recording devices in the Hamilton County Courthouse. This matter is before the Court on various motions in limine (Docs. 133, 136, and 137). Plaintiffs move to exclude: (1) the deposition transcript of deceased Common Pleas Judge Norbert Nadel; (2) the narrative statement of deceased witness Kimball Perry; and (3) all references to prior Court Orders in this case. (Doc. 133). Defendant moves to exclude: (1) third-party testimony of Judge Nadel's statements concerning Hamilton County Local Rule 33 and the prohibition against recording inside the Hamilton County Courthouse (Doc. 136); and (2) any reference to racial animus or racial retaliation as a motivating factor for plaintiffs' arrests (Doc. 137). Appropriate response and reply memoranda have been filed (Docs. 138, 139, 140, 141, 142, 143, 144, 145).

**I. Background**

The Sixth Circuit summarized the factual background of this case as follows:

In 2014, Enoch and Corbin visited the county courthouse in Hamilton County, Ohio to attend a pretrial hearing in the criminal prosecution of Tracie Hunter, a local juvenile court judge. Corbin was a bailiff for Judge Hunter before she was removed from the bench. Enoch was in court that day conducting a case study of the prosecution of Judge Hunter. At the conclusion of the day's proceedings, Enoch and Corbin exited the courtroom and, using their iPads, began taking videos and photos in the hallway.

Enoch and Corbin stood with others congregated outside the courtroom. When Kimball Perry, a reporter for the *Cincinnati Enquirer,* exited the courtroom, Corbin

pointed the iPad towards Perry. As Perry walked down the hallway and turned down a different hallway, Corbin followed, taking pictures of and video recording the reporter. Perry then called out to the Deputies—here, acting as court security officers—that Corbin was taking pictures in the hallway. All the while, Enoch was also taking pictures on her iPad. The Deputies responded to the commotion. Deputy Hogan ordered Corbin and Enoch to stop recording and to turn off their devices, insisting that a local court rule prohibited photography or video recording anywhere in the courthouse. The Deputies also demanded that Corbin and Enoch provide photo identification. After Corbin did so, he argued with the Deputies that he was permitted to take pictures and record videos in the hallway because the judge only prohibited photography *inside* the courtroom, not in the hallways.

While the Deputies were discussing Corbin's conduct that had led to the commotion, Corbin took out his iPad again to take a picture of the courtroom door. On the door was posted a notice stating that "use of cell phones, pagers, cameras, electronic devices are prohibited without permission of the Court." R. 84-11 at PageID 1236.

Local Rule 33(D)(6) prohibits recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." Hamilton Cty. Common Pleas Court R. 33(D)(6). Judge Nadel, who presided at the Hunter trial, gave an instruction in his courtroom pursuant to Rule 33(D)(6), but did not reference "hallways" in those instructions. However, when deposed in this case, Judge Nadel testified that he understood that "the hallway" was an "adjacent area[ ]" that was "ancillary to the courtroom" and that he thought that this understanding was implicit in his order. Neither Hogan nor Nobles had seen an order from Judge Nadel defining "ancillary areas" to include the hallways of the courthouse.

The Deputies charged both Corbin and Enoch for disorderly conduct under Ohio Rev. Code § 2917.11. Enoch also was charged with failure to disclose information under Ohio Rev. Code § 2921.29, on the basis that she had refused to identify herself. The Deputies later testified that they arrested the pair for taking photographs in violation of Local Rule 33(D)(6). All charges were subsequently dismissed.

Enoch and Corbin filed this suit under 42 U.S.C. § 1983 alleging First and Fourth Amendment claims and pendent state-law claims against Deputies Hogan and Nobles, the Hamilton County Sheriff's Office, and County Sheriff Jim Neil, along with four other employees of the Sheriff's Office who have since been dismissed. As part of their claims, Enoch and Corbin maintained that they were singled out and arrested because they were African American. Although several other individuals—most of them white—were using cameras and other recording devices in the hallways, they were not prohibited from doing so by the Deputies, and none of them were arrested.

2

*Enoch v. Hamilton Cty. Sheriff's Off.*, 818 F. App'x 398, 400–01 (6th Cir. 2020) (footnote omitted).

## II. Procedural Background

This case has a long and complicated procedural history, including two appeals to the United States Court of Appeals for the Sixth Circuit and a post-remand Order from this Court granting in part and denying in part defendant's motion to dismiss or for summary judgment. (Doc. 120). The result is that only one claim remains – plaintiffs' official capacity claim against the Hamilton County Sheriff[1] for speech-based retaliation in violation of the First Amendment.

In preparation for the March 7, 2022 trial, both parties filed motions in limine. Plaintiffs first move to exclude the deposition transcript of deceased Common Pleas Judge Norbert Nadel. Judge Nadel presided over the Tracie Hunter criminal proceedings, and plaintiffs contend that his deposition testimony should be excluded pursuant to Federal Rules of Evidence 402 and 802[2] because it is both irrelevant and inadmissible hearsay. (Doc. 133 at PAGEID 2152-54). Second, plaintiffs move to exclude the narrative statement of Kimball Perry, a non-party witness who is now deceased, because it constitutes inadmissible hearsay as defined in Rules 801 and 803 and because it lacks the necessary authentication required by Rule 901. (Doc. 133 at PAGEID 2154-58). Finally, plaintiffs move to exclude all references to prior Court Orders in this case, particularly references to a finding that the arresting deputies had probable cause to arrest plaintiffs, because the finding is irrelevant to the remaining claim and because such references would invade the Court's exclusive province to instruct the jury on the applicable law. (Doc. 133 at PAGID 2158-59).

---

[1] All references to the Hamilton County Sheriff are in an official capacity only. The official capacity claim is a claim against Hamilton County, the "entity of which an officer is an agent." *Monell v. Dept. of Social Services*, 436 U.S. at 690, n. 55.
[2] All references to "Rules" in this Order refer to the Federal Rules of Evidence unless otherwise specified.

3

The defendant first moves to exclude any third-party testimony regarding Judge Nadel's statements about Hamilton County Local Rule 33 and the County courthouse recording ban. (Doc. 136). Defendant contends that witness testimony regarding Judge Nadel's recording instructions constitutes inadmissible hearsay in violation of Rule 802, especially when Judge Nadel's deposition contains the best evidence of Judge Nadel's instructions. (Doc. 136 at PAGEID 2183-86). Second, defendant moves to exclude any reference to racial animus or racial retaliation as a motivating factor for plaintiffs' arrests. (Doc. 137). The defendant contends that any testimony that the arresting deputies were motivated by racial animus or disparate treatment of racial groups should be excluded pursuant to Rule 402 as irrelevant and pursuant to Rule 403 as unduly confusing to the jury and unfairly prejudicial to the defendant. (Doc. 137 at PAGEID 2190-92). In addition, defendant argues, without a proper foundation such testimony constitutes inadmissible lay witness opinion testimony and must be excluded pursuant to Rule 701. (*Id.* at PAGEID 2192-94).

## III. Legal Standard

While motions in limine are not explicitly authorized by the Federal Rules of Procedure or Federal Rules of Evidence, the Court has the discretion to determine a motion in limine pursuant to its "inherent authority to manage the course of trials." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liab. Litig.*, 546 F. Supp. 3d 666, 670 (S.D. Ohio 2020) (quoting *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). Motions in limine are intended "to avoid delay and ensure an evenhanded and expedient trial" by ruling on certain evidentiary issues in advance of trial. *Id.* (quoting *In re E.I. du Pont de Nemours &Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016)); *see also Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004).

Courts should grant motions in limine "only when evidence is clearly inadmissible on all potential grounds." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (citation omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846)).

The Sixth Circuit has stated that the "better practice" is to address questions regarding the admissibility of broad categories of evidence "as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). "[A] court is almost always better situated during the actual trial to assess the value and utility of evidence." *Owner–Operator Independent Drivers Ass'n v. Comerica Bank*, No. 05–CV–0056, 2011 WL 4625359, at *1 (S.D. Ohio Oct. 3, 2011) (citation omitted). "The denial, in whole or in part, of a motion in limine does not give a party license to admit all evidence contemplated by the motions; it simply means that the Court cannot adjudicate the motion outside of the trial context." *In re Davol., Inc.*, 546 F. Supp. 3d at 671.

IV. Analysis

    A. **Judge Nadel's Deposition Testimony and Testimony of Courtroom Witnesses**

Plaintiffs move to exclude Judge Nadel's deposition testimony as irrelevant and inadmissible hearsay. (Doc. 133). The defendant contends that Judge Nadel's deposition testimony is the best evidence of the late judge's recording instructions, and, therefore, the Court should admit the deposition but exclude third-party witness testimony regarding Judge Nadel's in-court recording prohibition. (Doc. 137).

*1. Sixth Circuit Determination*

As part of it qualified immunity analysis in this case, the Sixth Circuit stated:

> Two things are undisputed: that Enoch and Corbin were recording in the hallways outside the courtroom, and that Judge Nadel, who presided at the Hunter proceedings, never entered an order defining the hallways as "ancillary area[s]" in which recording was prohibited.

(Doc. 108 at PAGEID 1978). The Court then concluded that the arresting deputies had probable cause to arrest Enoch and Corbin for violating Rule 33(D)(6), the recording ban, and were, therefore, entitled to qualified immunity. *Id.* at PAGEID 1977-78. *See also Id.* at PAGEID 1979) ("Even if the rule itself, and Judge Nadel's supplemental order, did not explicitly characterize the hallways as 'ancillary area[s],' the unrebutted evidence shows that the common practice in the Hamilton County courthouse was to treat it as such . . . [so it was] reasonable for the Deputies to have believed that was the case here.").

Plaintiffs request that the Court instruct the jury that Judge Nadel never explicitly included the hallways in his recording ban. (Doc. 141 at PAGEID 2217). If the Court so instructs, Judge Nadel's testimony becomes irrelevant and plaintiffs agree not to call witnesses to testify to Judge Nadel's in-court statements regarding the recording ban. (Doc. 141 at PAGEID 2218-19).

*2. Applicable Hearsay Exception*

"Hearsay" is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Unless an exception applies, hearsay is not admissible at trial. Fed. R. Evid. 802.

The parties agree that Judge Nadel's deposition testimony constitutes hearsay. (Doc. 133 at PAGEID 2152; Doc. 139 at PAGEID 2206). The issue, then, becomes whether an exception applies to the general hearsay inadmissibility rule.

6

Rules 803 (which applies regardless of whether the declarant is available) and 804 (which applies only when the declarant is unavailable as a witness) enumerate the most common exceptions to the hearsay rule. As Judge Nadel died in 2021, he is obviously unavailable as a witness at trial. Fed. R. Evid. 804(a)(4). Where a declarant is unavailable, his former testimony in the same matter is "not excluded by the rule against hearsay if" the testimony "was given as a witness at a trial, hearing, or lawful deposition" and the party against whom it is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

In this case, plaintiffs—the parties against whom the testimony is offered—deposed Judge Nadel under oath at a lawful deposition. Plaintiffs had both the opportunity and the motive to develop his testimony as if on cross-examination. Accordingly, pursuant to Rule 804(b)(1), Judge Nadel's deposition testimony is not excludable as hearsay.

3. Relevance

Plaintiffs also seek to exclude Judge Nadel's deposition testimony as irrelevant. (Doc. 133 at PAGEID 2152). Conversely, defendant seeks to exclude any testimony from plaintiffs' witnesses "as to the statements or orders that Judge Nadel made regarding the prohibition on the use of recording devices in the Hamilton County Court of Common Pleas." (Doc. 136 at PAGEID 2184).

With regard to relevance, several facts appear to be undisputed: (1) Judge Nadel ordered attendees at the Hunter in-court criminal proceedings to refrain from "taking cell phone pictures" (Doc. 95-2 at PAGEID 1702); (2) Judge Nadel never explicitly extended that order to the hallways (Doc. 79 at PAGEID 893; Doc. 120 at PAGEID 1250); (3) Judge Nadel testified at his deposition that he considered the hallway adjacent to the courtroom and, therefore, implicitly

7

included within the order prohibiting recording (Doc. 79 at PAGEID 884, 892-93); (4) Judge Nadel approved applications for media members to record "judicial proceedings" but none of those orders referenced the hallways (Doc. 84-9 at PAGEID 1234); (5) plaintiffs intend to call fact witnesses to testify to Judge Nadel's recording ban statements to those present in the courtroom (Doc. 135 at PAGEID 2171-73); and (6) neither arresting deputy, at the time of plaintiffs' arrests, had seen an order from Judge Nadel stating that the hallways were implicitly included in the recording ban (Doc. 108 at PAGEID 1973).

In denying summary judgment on plaintiffs' sole remaining claim, the official capacity First Amendment claim, the Court explained:

> In light of these factual issues, the Court cannot resolve on summary judgment whether the *Nieves* [*v. Bartlett*, 139 S.Ct. 1715 (2019)] exception applies and a constitutional violation occurred; i.e., whether despite having probable cause to detain and arrest plaintiffs, defendants violated plaintiffs' First Amendment rights by singling them out for punishment.
>
> Though plaintiffs cannot pursue their First Amendment claim against the defendant deputies in their individual capacity based on the *Nieves* exception, [the second Sixth Circuit opinion in this case] does not foreclose plaintiffs from pursuing their official capacity claim for speech-based retaliation under the First Amendment. Plaintiffs can proceed under the theory that the deputies were enforcing an official policy or custom of the County when they arrested plaintiffs for recording events in the hallway of the Hamilton County Courthouse while other similarly situated individuals were not arrested.

(Doc. 120 at PAGEID 2063). The "factual issues" to which the Court referred include "whether plaintiffs and the other individuals recording in the Courthouse hallways at the time of plaintiffs' arrests were similarly situated" (*Id.*) and "whether the defendant deputies acted pursuant to a County policy when they arrested plaintiffs." (*Id.* at PAGEID 2064). Thus, these are the factual issues against which relevance must be measured.

In arguing the relevance of Judge Nadel's deposition testimony, defendant states, without citation to authority, "Plaintiffs must show that Deputies Hogan and Nobles acted pursuant not

8

merely to an unconstitutional *County* policy, but instead pursuant to an unconstitutional policy of the *Hamilton County Sheriff*." (Doc. 139 at PAGEID 2207) (emphasis in the original). Defendant argues that Judge Nadel's testimony directly contradicts the position that the deputies were acting pursuant to an "unconstitutional policy of the Hamilton County Sheriff's Office when they arrested [p]laintiffs." (Doc. 139 at PAGEID 2205). The distinction defendant seeks to draw finds no support in the law.

Plaintiffs' official capacity suit against the Hamilton County Sheriff is in reality an official capacity suit against Hamilton County, the entity of which defendant is an agent. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). *See also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "An official-capacity claim against a person is essentially a claim against the municipality." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016); *Myers v. Montgomery Cty. Bd. of Comm'rs*, No. 3:18-cv-00409, 2019 WL 2567748, at *3 (S.D. Ohio June 21, 2019) (§ 1983 official capacity claims against county sheriff and deputy are "claims against the municipality, *i.e.*, the County"); *Young v. Campbell County*, 846 F. App'x 314, 329 (6th Cir. 2021) (Because a § 1983 action against an officer in his official capacity "is equivalent to a suit against the entity on whose behalf he acts—Campbell County," the "'plaintiff "must show that the alleged violation occurred because of a municipal policy, practice, or custom."'") (quoting *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016)). In *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), a civil rights case where the Chief of the Jefferson County, Kentucky Police Department was sued in his official capacity, the Sixth Circuit explained:

> A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989). Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint. . . .

9

> The County may be held liable for Matthews's injuries only if those injuries were the result of an unconstitutional policy or custom *of the County*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

*Id*. at 1049 (emphasis added).

As plaintiffs' official capacity claim is against Hamilton County, plaintiffs must show their injuries were the result of an unconstitutional policy or custom of the County, not specifically the Hamilton County Sheriff. Therefore, to the extent defendant seeks to introduce Judge Nadel's deposition testimony "on the question of whether Deputies Hogan and Nobles were enforcing a Sheriff policy" as opposed to "a Court policy when they arrested [p]laintiffs" (Doc. 139 at PAGEID 2208), Judge Nadel's testimony is not relevant.[3] Plaintiffs' motion in limine is GRANTED in this respect.

To the extent defendant seeks to introduce Judge Nadel's testimony for the purpose of proving he specifically designated the hallways as an area within the purview of Rule 33(D)(6) or to suggest the hallways were implicitly covered by his order, the Sixth Circuit has already spoken on this matter, finding it undisputed: "Judge Nadel, who presided at the Hunter proceedings, never entered an order defining the hallways as 'ancillary area[s]' in which recording was prohibited." (Doc. 108 at PAGEID 1978). Judge Nadel's testimony on this point is simply not relevant, and testimony concerning what other witnesses heard Judge Nadel say or, more importantly, did not say, is likewise not relevant.

To the extent defendant or plaintiffs may seek to offer Judge Nadel's testimony for some other purpose, and if so, whether other witnesses may be permitted to testify for impeachment purposes, the Court reserves ruling until trial.

---

[3] For this same reason, plaintiffs' argument that testimony from Judge Nadel on Hamilton County Sheriff's policy lacks foundation (Doc. 143 at PAGEID 2225-2227) is moot.

B.  **Kimball Perry's Written Statement**

Plaintiffs move to exclude the written narrative statement of Kimball Perry, a deceased witness. (Doc. 133). Specifically, plaintiffs contend that Perry's written narrative is inadmissible unauthenticated hearsay and must be excluded pursuant to Rules 802 and 901.

The parties agree that Perry's out-of-court statement constitutes hearsay evidence. As explained above, hearsay must be excluded unless it satisfies an exception to the hearsay rule. Unlike Judge Nadel, Perry was not deposed before his demise. Defendant contends that Perry's statement falls within the purview of the residual hearsay exception contained in Rule 807. (Doc. 140).

To satisfy Rule 807, a statement must be: (1) "supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement;" and (2) "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). The proponent must also meet the notice requirement contained in Rule 807(b).

In this case, the Court need not address the notice requirement because the defendant is unable to meet either Rule 807(a) requirement. First, the narrative statement lacks sufficient guarantees of trustworthiness, considering the circumstances under which it was made. It is neither signed nor dated by the purported author, Kimball Perry. (Doc. 133-1 at PAGEID 2161). Although it briefly describes the interaction between plaintiffs and the arresting deputies, the statement was not solicited by the arresting deputies nor prepared in their presence. (Doc. 76 at PAGEID 695-96). The statement indicates it was received by the "reporting officer," B. Hogan, on July 15, 2014, approximately three weeks after the incident described. (Doc. 133-1 at

11

PAGEID 2161, Doc. 76 at PAGEID 695-96).  Yet, Deputy Hogan testified that he did not know if anyone in the Sheriff's Office asked Perry to prepare a statement; he did not receive the statement from Perry; and he did not know when (or even if) Perry completed the narrative. (Doc. 76 at PAGEID 695-96).  Indeed, in contesting plaintiffs' motion to exclude it, the defendant does not offer any evidence concerning the statement's origination, including when, where, or who produced it or how the Sheriff's Office originally received the report from Perry. (Doc. 140 at PAGEID 2212-13).

Second, the narrative statement is not "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," as required by Rule 807(a)(2).  The one-paragraph statement purportedly describes events, including conversations between plaintiffs and the arresting deputies, in the hallway outside the Hunter criminal proceeding prior to plaintiffs' arrests.  (Doc. 133-1 at PAGEID  2161).  Both plaintiffs and both arresting officers are listed as trial witnesses.  (Doc. 135).  All four participants to the events can offer evidence just as probative as that offered by the narrative statement.  In addition, the events described were captured on video, and the video—identified by both parties as depicting "Hogan, Corbin and Perry"—is listed by both parties as a trial exhibit.  (Doc. 135 at PAGEID 2177, 2178).  Because the Perry narrative statement does not satisfy the requirements of Rule 807(a), it must be excluded as hearsay pursuant to Rule 802.

### C. Reference to Prior Court Findings

Plaintiffs move to exclude evidence of prior court Orders in this case, including references to the conclusion that the arresting deputies had probable cause to arrest plaintiffs. (Doc. 133 at PAGEID 2158-59).  Plaintiffs contend that: (1) such finding is irrelevant to whether the deputies arrested plaintiffs pursuant to a County custom, policy, or practice; and (2) reference

12

to such findings invades the Court's exclusive province to instruct the jury on the law. Defendant responds that: (1) since plaintiffs intend to offer evidence that the deputies arrested plaintiffs and seized their electronic devices without a warrant it would be unduly prejudicial to defendant not to permit the probable cause finding; (2) the *Nieves* Court stated that a probable cause finding generally defeats a First Amendment retaliatory arrest claim as a matter of law; and (3) reference to the probable cause finding does not invade the Court's exclusive province of legal instruction because, factually, it has been determined that the deputies had probable cause to arrest plaintiffs. (Doc. 138 at PAGEID 2198-2201).

The Sixth Circuit has determined that the deputies had probable cause to arrest plaintiffs for violating Rule33(D)(6), and the Court and the parties are bound by the Sixth Circuit's determination. The only issue left for trial is whether plaintiffs can prove they satisfy the *Nieves* exception to a First Amendment retaliatory arrest claim. The Supreme Court in *Nieves* stated that a showing of probable cause for the criminal conduct will *generally* defeat a retaliatory arrest claim. *Id.* at 1727. However, there is a narrow exception "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id*. at 1727. In order to invoke the *Nieves* exception, plaintiffs must present "objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 1727. A claim under the *Nieves* exception necessarily assumes there is probable cause for the arrest, but the circumstances surrounding the arrest give rise to an inference of a retaliatory motive for the arrest such that the presence of probable cause does not defeat the First Amendment claim. Thus, probable cause will not be an issue at trial. Any evidence or arguments that defendant may make regarding the implications of

13

the Sixth Circuit's finding would, in fact, invade the Court's exclusive providence to instruct the jury on the law.

Moreover, plaintiffs represent that they have no plans to offer evidence regarding the absence of a warrant because it is not necessary to their First Amendment claim. (Doc. 145 at PAGEID 2243). In the event any such evidence were to be introduced at trial, defendant's concern with unfair prejudice can be handled through a limiting instruction by the Court.

Thus, the parties will not be permitted to discuss the probable cause finding in their voir dire or opening statements, and any evidence that may be presented on this issue will be evaluated in the context of the trial and subject to an appropriate limiting instruction. *See In re E.I. du Pont*, 348 F. Supp. 3d at 721.

### D. References to Racial Animus

Defendant moves to exclude any reference to racial animus or racial retaliation as a motivating factor in plaintiffs' arrests. (Doc. 137). Plaintiffs agree "that they are not claiming there was a custom, policy or practice of racial discrimination promulgated or endorsed by the County Sheriff regarding the First Amendment violations here." (Doc. 142 at PAGEID 2221). However, plaintiffs contend "that should not bar witnesses from commenting on their factual observations as to how small and minority media were treated by Hamilton County deputies in carrying out a custom, policy or practice of barring use of recording devises [sic] in the courthouse hallways." (*Id.* at PAGEID 2222).

Plaintiffs seek to admit evidence in two categories that will likely reference race: (1) "[f]actual observations about how Plaintiffs were treated in comparison to more established mainstream media;" and (2) "Enoch's testimony regarding her work at the time for a small minority media company . . . as it explains her reason for being present during the Hunter

14

proceedings and provides background information for the jury to weigh her credibility and the substance of her testimony." (*Id.*).

Defendant contends that reference to racial animus or disparate treatment of racial or ethnic groups is irrelevant and/or unduly prejudicial to the defendant and confusing to the jury. According to the defendant, such evidence should be excluded pursuant to Rules 402 and 403. (Doc. 137). Defendants further argue that lay witness's opinion testimony is inadmissible unless the proponent of the evidence lays a proper foundation. (Doc. 137 at PAGEID 2193-94).

Rule 402 precludes admission of irrelevant evidence, but the definition of relevance is extremely liberal. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). Rule 403 permits a court to exclude relevant evidence only "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Rule 403 balancing test "is strongly weighted toward admission," and trial courts "enjoy 'broad discretion' in making the prejudice determination." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)). "Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *In re Davol, Inc.*, 546 F. Supp. 3d at 671 (quoting *In re E.I. du Pont*, 348 F. Supp. 3d at 721)).

At this juncture, it is premature to broadly rule that all references to race must be excluded. The Court defers ruling on race-related testimony until trial so that individual questions of foundation, relevancy, and potential prejudice may be evaluated in context.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs' motion in limine (Doc. 133) is **GRANTED IN PART AND DENIED IN PART**;

2. Neither plaintiffs nor defendant will reference the Sixth Circuit's probable cause finding during voir dire or opening statements;

3. Defendants' motion in limine to exclude testimony related to Judge Nadel's recording ban statements (Doc. 136) is **GRANTED**;

4. Defendants' motion in limine to exclude testimony related to racial animus (Doc. 137) is **DENIED**.

Date: 3/2/2022

Karen L. Litkovitz
United States Magistrate Judge