# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

VANESSA ENOCH, *et al.*,                           Case No. 1:16-cv-661
      Plaintiffs,                                Litkovitz, M.J.

      vs.

HAMILTON COUNTY SHERIFF,                    **ORDER**
      Defendant.

Plaintiffs initiated this civil rights action challenging their arrests and the confiscation of their recording devices in the Hamilton County Courthouse. Following a five-day trial, a jury awarded $35,000 in compensatory damages on plaintiff Vanessa Enoch's claim but found in defendant's favor on plaintiff Avery Corbin's claim.

This matter is before the Court on plaintiff Corbin's motion for judgment notwithstanding the verdict (Doc. 158) and defendant's motion for judgment as a matter of law (Doc. 163). Appropriate response and reply memoranda have been filed (Docs. 164, 170, 171, 172). In addition, plaintiff Vanessa Enoch filed a motion for attorney fees (Docs. 160, 162) on which the Court stayed briefing pending resolution of the instant motions. (Doc. 169).

## I. Background

The Sixth Circuit summarized the factual background of this case as follows:

In 2014, Enoch and Corbin visited the county courthouse in Hamilton County, Ohio to attend a pretrial hearing in the criminal prosecution of Tracie Hunter, a local juvenile court judge. Corbin was a bailiff for Judge Hunter before she was removed from the bench. Enoch was in court that day conducting a case study of the prosecution of Judge Hunter. At the conclusion of the day's proceedings, Enoch and Corbin exited the courtroom and, using their iPads, began taking videos and photos in the hallway.

Enoch and Corbin stood with others congregated outside the courtroom. When Kimball Perry, a reporter for the *Cincinnati Enquirer*, exited the courtroom, Corbin pointed the iPad towards Perry. As Perry walked down the hallway and turned down a different hallway, Corbin followed, taking pictures of and video recording

the reporter. Perry then called out to the Deputies—here, acting as court security officers—that Corbin was taking pictures in the hallway. All the while, Enoch was also taking pictures on her iPad. The Deputies responded to the commotion. Deputy Hogan ordered Corbin and Enoch to stop recording and to turn off their devices, insisting that a local court rule prohibited photography or video recording anywhere in the courthouse. The Deputies also demanded that Corbin and Enoch provide photo identification. After Corbin did so, he argued with the Deputies that he was permitted to take pictures and record videos in the hallway because the judge only prohibited photography *inside* the courtroom, not in the hallways.

While the Deputies were discussing Corbin's conduct that had led to the commotion, Corbin took out his iPad again to take a picture of the courtroom door. On the door was posted a notice stating that "use of cell phones, pagers, cameras, electronic devices are prohibited without permission of the Court." R. 84-11 at PageID 1236.

Local Rule 33(D)(6) prohibits recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." Hamilton Cty. Common Pleas Court R. 33(D)(6). Judge Nadel, who presided at the Hunter trial, gave an instruction in his courtroom pursuant to Rule 33(D)(6), but did not reference "hallways" in those instructions. However, when deposed in this case, Judge Nadel testified that he understood that "the hallway" was an "adjacent area[ ]" that was "ancillary to the courtroom" and that he thought that this understanding was implicit in his order. Neither Hogan nor Nobles had seen an order from Judge Nadel defining "ancillary areas" to include the hallways of the courthouse.

The Deputies charged both Corbin and Enoch for disorderly conduct under Ohio Rev. Code § 2917.11. Enoch also was charged with failure to disclose information under Ohio Rev. Code § 2921.29, on the basis that she had refused to identify herself. The Deputies later testified that they arrested the pair for taking photographs in violation of Local Rule 33(D)(6). All charges were subsequently dismissed.

Enoch and Corbin filed this suit under 42 U.S.C. § 1983 alleging First and Fourth Amendment claims and pendent state-law claims against Deputies Hogan and Nobles, the Hamilton County Sheriff's Office, and County Sheriff Jim Neil, along with four other employees of the Sheriff's Office who have since been dismissed. As part of their claims, Enoch and Corbin maintained that they were singled out and arrested because they were African American. Although several other individuals—most of them white—were using cameras and other recording devices in the hallways, they were not prohibited from doing so by the Deputies, and none of them were arrested.

2

*Enoch v. Hamilton County Sheriff's Office*, 818 F. App'x 398, 400–01 (6th Cir. 2020) (footnote omitted).

## II. Procedural Background

This case has a long and complicated procedural history, including two appeals to the United States Court of Appeals for the Sixth Circuit and a post-remand Order from this Court granting in part and denying in part defendant's motion to dismiss or for summary judgment. (Doc. 120).  The result is that only one claim remained for trial – plaintiffs' official capacity claim against the Hamilton County Sheriff[1] for speech-based retaliation in violation of the First Amendment.

A jury trial commenced on March 7, 2022.  Late in the day on March 11, 2022, the jury returned its verdicts: a plaintiff's verdict in the amount of $35,000 on Vanessa Enoch's claim, and a defense verdict on Avery Corbin's claim.  (Doc. 155).  Corbin now moves for judgment notwithstanding the verdict (more commonly called "judgment as a matter of law") pursuant to Federal Rule of Civil Procedure 50(b) on his claim (Doc. 158), and defendant moves for judgment as a matter of law on Enoch's claim or, in the alternative, for remittitur or a new trial pursuant to Rule 59 (Doc. 163).

## III. Legal Standard

Pursuant to Federal Rule of Civil Procedure 50: once "a party has been fully heard on an issue during a jury trial" and the court concludes that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party" on that issue.  In evaluating a Rule 50 motion,

---

[1] All references to the Hamilton County Sheriff are in an official capacity only.  The official capacity claim is a claim against Hamilton County, the "entity of which an officer is an agent."  *Monell v. Dept. of Social Services*, 436 U.S. at 690, n. 55.

the Court is not permitted to "reweigh the evidence or assess the credibility of witnesses." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007)). A Rule 50 motion may be granted "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Id.* (quoting *Radvansky*, 496 F.3d at 614); *Seales v. City of Detroit*, 959 F.3d 235, 240 (6th Cir. 2020).

**IV. Analysis**

**A. Plaintiff Corbin's Motion for Judgment as a Matter of Law Must be Denied**

Because the Sixth Circuit had already determined that the officers had probable cause to arrest Corbin,[2] he could proceed with his First Amendment retaliatory arrest claim only if he "presented sufficient 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Enoch v. Hamilton County Sheriff's Office*, 818 F. App'x at 406 (quoting *Nieves v. Bartlett*, ___ U.S. ___, 139 S.Ct. 1715, 1727 (2019)). Once Corbin offered such evidence, he would prevail on his claim only if he also proved by a preponderance of the evidence that: (1) he engaged in constitutionally protected activity; (2) "he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected" activity; and (3) the protected activity was "a substantial or motivating factor in the decision to take the adverse action." *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022) (quoting *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011)); *Richmond Newspapers, Inc. v. Virginia* 448 U.S. 555 (1980).

---

[2] *Enoch v. Hamilton County Sheriff's Office*, 818 F. App'x at 405-406.

Because the parties agreed that officers arrested Corbin and seized his recording device, the Court instructed the jury that Corbin had established the required adverse action. Thus, to prevail on his Rule 50 motion for judgment as a matter of law, Corbin must establish that, viewing the evidence in the light most favorable to defendant, reasonable jurors could come to only one conclusion, i.e., that: (1) similarly situated individuals not engaged in the same sort of protected activity were not arrested; (2) Corbin engaged in constitutionally protected activity; and (3) the protected activity was a substantial or motivating factor in Corbin's arrest and seizure of his device. Corbin has not met this burden.

First, while video evidence clearly shows several other individuals using recording devices in the hallway, only plaintiff Corbin recorded Kimball Perry at close range and then followed Perry down the hallway recording him. Perry complained to officers, and the officers questioned and arrested only Corbin and Enoch (who followed Perry and Corbin down the hallway at a distance). Indeed, the parties presented multiple videos of the incident because several people continued recording as deputies questioned and arrested Enoch and Corbin. Thus, reasonable jurors could conclude that officers singled out Corbin for arrest because he recorded Perry at close range and then followed Perry down the hallway videotaping him.

Second, viewing the evidence in the light most favorable to defendant, reasonable jurors could conclude that Corbin was not engaged in constitutionally protected activity. Video evidence shows Corbin recording and photographing Kimball Perry exclusively. Court personnel testified that Corbin also had been admonished for recording Perry inside the courtroom shortly before the hallway incident. In addition, Corbin testified that he and Perry had an antagonistic relationship, and he wanted Perry to feel the discomfort of being recorded.

Finally, even if Corbin were engaged in protected activity, reasonable jurors could conclude that it was not the motivating factor in Corbin's arrest. Corbin states, as evidenced in the videos admitted into evidence, that he protested Deputy Hogan's admonition against using a camera in the hallway by walking away and attempting to photograph the courtroom sign regarding camera use. However, Deputy Hogan testified that he reported to a "trouble run" in the courthouse hallway, indicating disruptive behavior. Deputy Hogan's arrest report, admitted into evidence as plaintiffs' exhibit nine, identifies Kimball Perry as the "victim" and states, "After leaving room 560 I saw Mr. Corbin filming Mr. Perry inches from his face. Mr. Corbin was told repeatedly to stop and refused to do so. After a brief verbal confrontation Mr. Corbin attempted to continue filming. He was then place[d] into custody for disorderly conduct." (Plaintiffs' Exhibit 9). Viewing this evidence in the light most favorable to defendant, reasonable jurors could conclude that protected activity was not a substantial or motivating factor in Corbin's arrest. Accordingly, Corbin's motion for judgment as a matter of law must be denied.

## B. Defendant's Motion for Judgment as a Matter of Law on Plaintiff Enoch's Claim Must be Denied

Defendant Hamilton County Sheriff moves for judgment as a matter of law on plaintiff Enoch's claim. In support of the motion, defendant contends that: (1) Enoch failed to satisfy the *Nieves* exception because others recording in the hallway did not follow Kimball Perry down the hallway so were not similarly situated; (2) Enoch failed to establish that her constitutionally protected activity was a substantial or motivating factor for her arrest; (3) Enoch was arrested pursuant to a valid time, place, and manner restriction, as a matter of law; and (4) Enoch failed to establish that the Sheriff failed to adequately train the arresting officers or that her injury resulted from a Sheriff's office policy, practice or procedure.

First,  as explained above and at length in prior Court orders, where probable cause to arrest exists, a plaintiff may proceed with a retaliatory arrest claim only if she presents objective evidence that similarly situated individuals not engaged in the same sort of protected speech were not arrested.  *Nieves*, 139 S.Ct. at 1727.  In this case, the parties stipulated that others were also recording in the courthouse hallway, but only Corbin and Enoch were arrested.  Defendant contends that the other photographers and videographers were not similarly situated to Corbin and Enoch because only Corbin and Enoch "decided to pursue Mr. Perry down a side hallway." (Doc. 163 at PAGEID 2799).  However, while the video evidence showed Corbin intentionally targeting Kimball Perry with his recording device, Enoch followed both Corbin and Perry only from a distance.  Indeed, Enoch testified that, unlike Corbin, she was not previously acquainted with Kimball Perry.  She was in the courthouse that day to gather information about the Hunter criminal proceedings for her graduate school program and with the hope of writing a news article.  She saw Corbin recording Perry, and she followed behind because she believed he must be somehow relevant to the court proceeding.  Viewing this evidence in the light most favorable to Enoch, the non-moving party, reasonable jurors could conclude that Enoch was similarly situated to the others in the hallway who recorded all hallway activities (including Perry's departure and Enoch's arrest) without being questioned or arrested.

Second, defendant contends that Enoch failed to present evidence that her constitutionally protected activity was a substantial or motivating factor for her arrest.  (Doc. 163 at PAGEID 2799).  However, in sharp contrast to Corbin's arrest report discussed above, Enoch's arrest report lists only the arresting officer, Deputy Nobles, as the "victim."  (Plaintiffs' Exhibit 11). Indeed, Deputy Nobles explained the reason for Enoch's arrest as follows:

> I responded to a trouble run outside of room 560.  Upon arrival, Deputies Hogan and Ferguson were already questioning an Avery Corban [sic].  I asked if anybody

else was taking pictures or had any recordings and Deputy Hogan pointed to
Venessa [sic] Enoch.  I approached her and asked if she had taken any pictures, her
response was "why are you asking me this?"  I advised her that she was identified
as taking pictures.  I then asked if she could show me if she had taken any pictures,
her respons [sic] was "no".  I then asked her name and she refused to give it to me.
I told her I was going to take her into custody, and she needed to put here [sic]
hands behind her back, she refused.  I again told her to put her hands behind her
back because I needed to identify her and explain the courthouse rules to her.  At
first she didn't want to place her hands behind her back.  Once I placed her first
hand in a hand cuff, Deputy Horton had her other hand in his own cuff.  Ms. Enoch
had both sets of hand cuffs on and behind her back.  Ms. Enoch was then taken to
room 260[.]  Ms. Enoch was transported along with Avery Corbin with out incident.
Ms. Enoch was then charged with Disorderly Conduct ORC 2917.11 and Failure to
identiy [sic] self to Law Enforcement. ORC 2921.29

(*Id.*).  In addition, Nobles' testimony and the video evidence recorded by others in the hallway

confirmed that Nobles questioned Enoch only about any photos she may have taken.  He did not

question her concerning Perry or any interactions she may have had with him.  Viewing the

evidence in the light most favorable to Enoch, reasonable jurors could conclude that her

protected activity was a substantial or motivating factor for her arrest.

Third, defendant contends that officers arrested Enoch pursuant to a valid time, place, and

manner restriction, as a matter of law.  (Doc. 163 at PageID 2801).  "[W]hile trial-related

newsgathering may be subjected to reasonable restrictions and limitations . . . [t]he Deputies

could not constitutionally prevent Enoch . . . from or punish [her] for gathering news about

matters of public importance when [her] actions violated neither rules nor laws."  *Enoch v.*

*Hogan*, 728 F. App'x 448, 456 (6th Cir. 2018).  The parties here offered evidence relating to the

courthouse recording rules, the way the deputies were trained regarding those rules, and the

Sheriff's enforcement of those rules.  In addition, the jurors viewed multiple videos of the

hallway events and saw others recording at the same place during the same time who were

neither questioned nor arrested.  Viewing that evidence in the light most favorable to Enoch, the

non-moving party, a jury could reasonably conclude that Enoch was not arrested pursuant to a valid time, place, and manner restriction.

Finally, defendant contends that Enoch failed to establish that the Sheriff failed to adequately train the arresting deputies or that her injury resulted from a Sheriff's office policy, practice or procedure.  (Doc. 163 at PAGEID 2803-07).  Again, the parties offered evidence relating to the courthouse recording rules, the way the deputies were trained regarding those rules, and the Sheriff's enforcement of and policies regarding those rules.  The jury heard former Sheriff Jim Neil's deposition testimony, testimony from the arresting deputies, and testimony from the Lieutenant in charge of court services at the time.  Based on that evidence, the jurors reasonably concluded that the Sheriff's employees were "acting pursuant to a County policy, practice or custom when they violated Plaintiff Vanessa Enoch's First Amendment rights." (Doc. 155 at PAGEID 2376).  Accordingly, defendant's motion for judgment as a matter of law must be denied.

### C.  Defendant's Motion to Alter the Judgment or for a New Trial

Alternatively, defendant moves for a new trial or to alter the judgment to remit the damage award to plaintiff Enoch pursuant to Federal Rule of Civil Procedure 59.  Rule 59(a)(1)(A) permits a court to grant a new trial on one or more issues decided by a jury "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Defendant moves for a new trial "for the same reasons stated above in the Sheriff's Motion for Judgment as a Matter of Law pursuant to Rule 50(b)."  (Doc. 163 at PAGEID 2809).  The Court denies defendant's motion for new trial for the reasons set forth above in denying defendant's motion for judgment as a matter of law.

Defendant's motion to alter the judgment to remit the jury's damage award is governed by Rule 59(e).  A trial court may remit a jury's damages award "only when, after reviewing all the evidence in the light most favorable to the prevailing party, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the conscience of the court."  *Corbin v. Steak n Shake, Inc.*, 861 F. App'x 639, 645 (6th Cir. 2021) (quoting *American Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004)).  "If there is any credible evidence to support a verdict, it should not be set aside."  *Id.* (quoting *American Trim*, 383 F.3d at 475).

In this case, defendant contends that the jury's award of $35,000 in compensatory damages should be remitted to a nominal amount because Enoch suffered no physical or monetary damages as a result of her arrest, because her liberty was restrained for only 90 minutes, and because Enoch alone testified to the emotional injuries she suffered.  (Doc. 163 at PAGEID 2808-09).  However, "[a] plaintiff's own testimony may be sufficient to demonstrate emotional distress, *Lentz v. City of Cleveland*, 694 F. Supp. 2d 758, 769 (N.D. Ohio 2010), but if a plaintiff relies exclusively on her own testimony, that testimony must include 'specific and definite evidence of her emotional distress,' and not simply conclusory statements."  *EEOC v. East Columbus Host, LLC*, No. 2:14-cv-1696, 2016 WL 4594727, at *7 (S.D. Ohio Sept. 2, 2016) (quoting *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 472 (6th Cir. 2009)); *see Lentz*, 694 F. Supp. 2d at 770 (reducing jury award for emotional distress to $200,000 because plaintiff suffered no monetary damages and the emotional harm was temporary in nature and did not produce physical manifestations); *see also Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (reducing emotional distress damages jury award to $150,000 where plaintiff relied "primarily on his own testimony to support his contention of emotional distress").

10

In this case, Enoch testified that her grandmother and mother raised her in a strict household which valued rule-following and regular church attendance.  She was a good student and was never subjected to disciplinary action in school at any level.  Prior to the events at issue in this case, she had never been handcuffed, searched, or arrested.  Enoch served as the first female deacon at her church.  She obtained a bachelor's degree from The Ohio State University, a Master of Business Administration from Xavier University, and Doctor of Philosophy in public policy and interdisciplinary studies from Union Institute and University.  As part of her doctoral studies, she engaged in a case study of black female judges removed from the bench, including Tracie Hunter.  She attended the June 25, 2014 hearing to gather information, including interviewing and photographing various participants.  In the courthouse hallway, a sheriff's deputy told her to stop taking pictures so she put her iPad (the device she used to take photographs) down immediately.  A deputy asked her to show him the videos she had taken.  She informed him that she had no videos, but she did not want to open her iPad because it contained interviews she believed to be confidential.  The deputy told her to open the iPad or be arrested so she opened the iPad.  Seeing hallway photographs on her iPad, she was handcuffed, searched, and arrested.  Many people in the hallway both witnessed and recorded these events.  Several such video recordings were entered into evidence at trial.  She can be heard on one of the videos asking, "I'm being arrested?!  What law was I violating?!"  Several television news channels broadcast the recordings, and those recordings are still available online.  The Sheriff's Office published a press release concerning her arrest.  (Plaintiff's Exh. 12).

Enoch further testified that, once arrested, deputies took her and Corbin to a Sheriff's Department inside the courthouse.  Deputies handcuffed her to a bench for approximately 90 minutes, during which she was extremely distraught and in "hysterics."  In addition, she had an

11

urgent need to use the lavatory, but she was not permitted to do so, even after a female deputy returned to the room. On August 1, 2014, a Hamilton County Municipal Court Judge dismissed the charges against her. (Plaintiff's Exh. 13).

Enoch stated under oath that, other than the deaths of her husband and grandmother, the arrest was the most traumatic experience she had ever had. She sought counseling, and the stress of these events caused her to gain 100 pounds and lose her hair. The pastor at her church asked her to explain her arrest in front of the congregation, and she was embarrassed for her daughters (aged 13 and 19 at the time) to see her handcuffed and arrested. She testified that her emotional harm is exacerbated by the fact that the videos are still available online (even though she has asked each of the television stations to remove them) and that she continues to fear that the videos will appear every time she applies for a job, etc. The Court concludes that Enoch's testimony is sufficiently specific and definite to support the jury's $35,000 award for compensatory damages.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff Avery Corbin's motion for judgment notwithstanding the verdict (Doc. 158) is **DENIED**;

2. Defendant's motion for judgment as a matter of law (Doc. 163) is **DENIED**; and

3. Defendant must file any response to plaintiff Enoch's motion for attorney fees (Doc. 162) no later than **TWENTY-ONE DAYS FROM THE DATE OF THIS ORDER**.

Date:  6/9/2022

Karen L. Litkovitz
United States Magistrate Judge