UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VANESSA ENOCH, *et al.*,<br>  Plaintiffs, | Case No. 1:16-cv-661<br>Litkovitz, M.J. |
| vs. | |
| HAMILTON COUNTY SHERIFF,<br>  Defendant. | **ORDER** |

Plaintiffs Vanessa Enoch and Avery Corbin initiated this civil rights action in 2016 challenging their arrests and the confiscation of their recording devices in the Hamilton County Courthouse. This matter is before the Court on plaintiff Vanessa Enoch's motion for attorney fees and costs (Doc. 162)[1] and supplemental motion for attorney fees (Doc. 179). Defendant filed memoranda in opposition (Docs. 177, 180), and plaintiff filed a reply memorandum (Doc. 178).

**I. Background**

The Sixth Circuit previously summarized the factual background of this case as follows:

In 2014, Enoch and Corbin visited the county courthouse in Hamilton County, Ohio to attend a pretrial hearing in the criminal prosecution of Tracie Hunter, a local juvenile court judge. Corbin was a bailiff for Judge Hunter before she was removed from the bench. Enoch was in court that day conducting a case study of the prosecution of Judge Hunter. At the conclusion of the day's proceedings, Enoch and Corbin exited the courtroom and, using their iPads, began taking videos and photos in the hallway.

Enoch and Corbin stood with others congregated outside the courtroom. When Kimball Perry, a reporter for the *Cincinnati Enquirer*, exited the courtroom, Corbin pointed the iPad towards Perry. As Perry walked down the hallway and turned down a different hallway, Corbin followed, taking pictures of and video recording

---

[1] Plaintiff refiled the initial motion (Doc. 160) as docket entry 162 to comply with the requirements of S.D. Ohio Civ. R. 5.1. Both documents are identical in substance. Therefore, docket entry 160 is denied as moot, and docket entry 162 will be addressed here.

the reporter. Perry then called out to the Deputies—here, acting as court security officers—that Corbin was taking pictures in the hallway. All the while, Enoch was also taking pictures on her iPad. The Deputies responded to the commotion. Deputy Hogan ordered Corbin and Enoch to stop recording and to turn off their devices, insisting that a local court rule prohibited photography or video recording anywhere in the courthouse. The Deputies also demanded that Corbin and Enoch provide photo identification. After Corbin did so, he argued with the Deputies that he was permitted to take pictures and record videos in the hallway because the judge only prohibited photography *inside* the courtroom, not in the hallways.

While the Deputies were discussing Corbin's conduct that had led to the commotion, Corbin took out his iPad again to take a picture of the courtroom door. On the door was posted a notice stating that "use of cell phones, pagers, cameras, electronic devices are prohibited without permission of the Court." R. 84-11 at PageID 1236.

Local Rule 33(D)(6) prohibits recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." Hamilton Cty. Common Pleas Court R. 33(D)(6). Judge Nadel, who presided at the Hunter trial, gave an instruction in his courtroom pursuant to Rule 33(D)(6), but did not reference "hallways" in those instructions. However, when deposed in this case, Judge Nadel testified that he understood that "the hallway" was an "adjacent area[ ]" that was "ancillary to the courtroom" and that he thought that this understanding was implicit in his order. Neither Hogan nor Nobles had seen an order from Judge Nadel defining "ancillary areas" to include the hallways of the courthouse.

The Deputies charged both Corbin and Enoch for disorderly conduct under Ohio Rev. Code § 2917.11. Enoch also was charged with failure to disclose information under Ohio Rev. Code § 2921.29, on the basis that she had refused to identify herself. The Deputies later testified that they arrested the pair for taking photographs in violation of Local Rule 33(D)(6). All charges were subsequently dismissed.

Enoch and Corbin filed this suit under 42 U.S.C. § 1983 alleging First and Fourth Amendment claims and pendent state-law claims against Deputies Hogan and Nobles, the Hamilton County Sheriff's Office, and County Sheriff Jim Neil, along with four other employees of the Sheriff's Office who have since been dismissed. As part of their claims, Enoch and Corbin maintained that they were singled out and arrested because they were African American. Although several other individuals—most of them white—were using cameras and other recording devices in the hallways, they were not prohibited from doing so by the Deputies, and none of them were arrested.

*Enoch v. Hamilton Cty. Sheriff's Off.*, 818 F. App'x 398, 400–01 (6th Cir. 2020) (footnote omitted).

## II. Procedural Background

This case has a long and complicated procedural history, including two appeals to the United States Court of Appeals for the Sixth Circuit and a post-remand Order from this Court granting in part and denying in part defendant's motion to dismiss or for summary judgment. (Doc. 120). The result is that only one claim remained for trial – plaintiffs' official capacity claim against the Hamilton County Sheriff[2] for speech-based retaliation in violation of the First Amendment.

A jury trial commenced on March 7, 2022. Late in the day on March 11, 2022, the jury returned its verdicts: a plaintiff's verdict in the amount of $35,000 on Vanessa Enoch's claim, and a defense verdict on Avery Corbin's claim. (Doc. 155). Corbin then moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on his claim (Doc. 158), and defendant moved for judgment as a matter of law on Enoch's claim or, in the alternative, for remittitur or a new trial pursuant to Rule 59 (Doc. 163). The Court denied both motions. (Doc. 173).

As the prevailing party at trial, Enoch now moves for an award of attorney fees and costs pursuant to 42 U.S.C. § 1988 (Docs. 162, 179). Plaintiff Enoch requests attorney fees of $536,088.20 and $1,940.45 in costs for representing Enoch from 2016 through the 2022 trial. (Doc. 162 at PAGEID 2614). Plaintiff Enoch further requests attorney fees of $40,462.50 for

---

[2] All references to the Hamilton County Sheriff are in an official capacity only. The official capacity claim is a claim against Hamilton County, the "entity of which an officer is an agent." *Monell v. Dept. of Social Services*, 436 U.S. at 690, n. 55.

work performed opposing defendant's post-trial motion and litigating issues related to attorney fees and costs. (Doc. 179 at PAGEID 2945).

### III. Legal Standard

Pursuant to 42 U.S.C. § 1988(b), a "prevailing party" in a civil rights action has the right to seek reasonable attorney fees and costs. *Kidis v. Reid*, 976 F.3d 708, 720 (6th Cir. 2020). "The aim of such fees is 'to aid civil rights,' not attorneys, and thus the primary concern is whether the fee awarded under § 1988 is reasonable." *H.D.V. - Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 382 (6th Cir. 2016) (quoting *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 612 (6th Cir. 2013)) (internal citation omitted). "A 'reasonable' fee is one 'sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.'" *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).

Courts typically employ the "lodestar method" to calculate reasonable attorney fees, i.e. "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates" after making a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 437.

### IV. Analysis

In this case, the parties agree that plaintiff Enoch is a "prevailing party" within the meaning of 42 U.S.C. § 1988. (Doc. 177 at PAGEID 2918). Defendant concedes that, as Enoch's attorneys are both highly competent and experienced civil rights attorneys, the requested

4

hourly rate of $500 is reasonable. (Doc. 176 at PAGEID 2912-2913).[3] However, defendant contends that the attorney fee award should be reduced because: (1) experienced attorneys should have required fewer hours to accomplish certain tasks; (2) Enoch achieved only limited success; and (3) the work performed on behalf of Avery Corbin, a non-prevailing party, should not be compensated at all. (Doc. 177).

### A. Number of Hours Reasonably Expended

O'Hara submitted contemporaneously made time records indicating that he and others at his firm expended 913.5 hours through trial plus an additional 41 hours on post-trial motions and responses and preparing the fee petition. (Doc. 162-2 at PAGEID 2646, Doc. 181 at PAGEID 2962). Similarly, Newman submitted contemporaneous time records reporting 403.45 hours expended through March 18, 2022. (Doc. 162-1 at PAGEID 2622, 2643). Both Newman and O'Hara reviewed their time records prior to submission, removed any "excessive, redundant, or otherwise unnecessary time," and reduced the gross billing total "by a duplication factor of 10%." (Doc. 162-1 at PAGEID 2622, Doc. 162 at PAGEID 2614).

Defendant submitted the declaration of local, experienced defense attorney Lawrence Barbiere as an expert on the reasonableness of the fees sought here. (Doc. 176). Based on Barbiere's declaration, defendant specifically contends that plaintiff's counsel: (1) should have spent approximately 20 hours less than they did preparing their first appellate brief to the Sixth

---

[3] Judges in this District commonly apply the Rubin Committee rates, "a list of pre-calculated billing rates tiered by years of experience" to determine a reasonable hourly rate for attorney fees. *Cooley v. Aevum Hotels, LLC*, No. 1:21-cv-798, 2022 WL 3042590, at *6 (S.D. Ohio Aug. 2, 2022) (quoting *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020)). Defendant acknowledges that Enoch's attorneys, Robert Newman and Michael O'Hara, "fall into that top category of competent and experienced civil rights attorneys." (Doc. 176 at PAGEID 2913). The Rubin rates from 2016 to 2022 for the most experienced senior attorneys range from $487.01 to $616.22 per hour. *See West v. AK Steel Corp.*, 657 F. Supp. 2d 914, 932 n.4 (S.D. Ohio 2009) (adjusted, as required, by a 4% annual cost-of-living allowance). Less experienced attorneys and paralegals in O'Hara's firm are billed at $75 or $150 per hour. (Doc. 162-2 at PAGEID 2795). The Court finds these rates reasonable, and defendant does not object to them.

Circuit because the issues had been researched in responding to defendant's motion to dismiss (Doc. 177 at PAGEID 2919-2920); (2) should have spent 48 hours less than they did responding to defendant's motion for summary judgment and preparing plaintiff's motion for partial summary judgment because the motions did not raise "novel legal issues" (*Id.* at PAGEID 2920); and (3) should have spent 24 fewer hours opposing defendant's second motion for summary judgment because plaintiff's position was "clearly contra to" the Sixth Circuit opinion that officers had probable cause to arrest plaintiff (*Id.*). The Court disagrees.

The trial court enjoys "[s]ubstantial deference" in determining attorney fee awards due to its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *NE Ohio Coalition for the Homeless*, 831 F.3d at 702-703 (quoting *Hensley*, 461 U.S. at 437). However, because that discretion has limits, "the court must provide 'a concise but clear explanation of its reasons for the fee award.'" *Id.* at 703 (quoting *Hensley*, 461 U.S. at 437). "[I]n assessing fees, district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

This case began in 2016. It involved a motion for preliminary injunction, a motion for judgment on the pleadings, a motion to dismiss, two motions for summary judgment, a motion for partial summary judgment, an attempt to certify the case to the Ohio Supreme Court, two interlocutory appeals to the Sixth Circuit—a 2017 appeal affirming the Court's denial of qualified immunity for alleged violations of First and Fourth Amendment rights (Doc. 66) and a 2019 appeal reversing the Court's denial of qualified immunity, affirming other grounds, and remanding for further proceedings (Doc. 108)—and culminated in a week-long jury trial in March 2022, nearly six years after the case began. The County aggressively defended this case

and raised many complex, novel issues at each stage of litigation, including after the second appeal and during trial. Indeed, the Court's post-remand Order resolving the remaining issues numbered thirty-six pages. (Doc. 120). This case was long, complicated, hard-fought, and involved many, many hours on both sides from competent, experienced counsel representing their clients well.

The issue before the Court is not whether, in isolated hindsight, plaintiff's counsel could have expended fewer hours on a certain task. Rather, the issue is whether work performed "was of a sort that 'a reasonable attorney would have believed . . . to be reasonably expended in pursuit of success at the point in time when the work was performed.'" *NE Ohio Coalition for the Homeless*, 831 F.3d at 708 (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)). Having observed this case from the beginning and having thoroughly reviewed every time entry from 2016 to the present, the Court concludes that plaintiff's counsel did, in fact, exercise billing judgment, remove unnecessary tasks, and present a very reasonable number of hours expended in this case. Accordingly, the Court declines to subtract as unreasonably expended any hours from the time records submitted.

### B. Enoch's Limited Success

Defendant correctly contends that the lodestar calculation does not end the evaluation of plaintiff's fee petition. (Doc. 177 at PAGEID 2921-2924). "'[T]he most critical factor' to a reasonable fee 'is the degree of success obtained.'" *McKelvey v. Sec'y of the Army*, 768 F.3d 491, 495 (6th Cir. 2014) (quoting *Hensley*, 461 U.S. at 436)). "'[T]he amount of damages awarded as compared to the amount sought' in a damages claim is one way to think about the

degree of success." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). As the Supreme Court explained in *Hensley*:

> There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
>
> * * *
>
> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.

461 U.S. at 434-435 (footnotes and internal citations omitted); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 823 (6th Cir. 2013) ("[W]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.") (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005)); *Corbin v. Steak n Shake, Inc.*, No. 2:17-cv-1043, 2020 WL 1899124, at *7 n.4 (S.D. Ohio Apr. 17, 2020) (declining to impose a fee reduction for failed

claims because the successful claim "was factually and legally related to the claims which failed").

In the case at bar, plaintiff Enoch alleged related claims based on a single event, i.e., that the Hamilton County Sheriff's Deputies violated plaintiff's rights when they arrested and detained her and seized her device for recording events of public interest in the hallway of the Hamilton County Courthouse on June 25, 2014. (Doc. 38). She alleged 11 related constitutional and state law claims against the Hamilton County Sheriff's Office and seven deputies, but all claims arose from the same factual event. (*Id.*). Ultimately, only a single First Amendment claim against the Hamilton County Sheriff in her official capacity proceeded to trial. In closing arguments, her attorney asked the jury to award $70,000 to $90,000, and the jury awarded Enoch $35,000 in compensatory damages.

Because Enoch's claims are based on a common core of facts and on related legal theories, the Court declines to treat them as distinct claims for the purpose of calculating attorney fees. Even though the majority of defendants were ultimately granted qualified immunity in this case and the jury awarded compensatory damages in an amount less than that requested, Enoch prevailed on her central claim that defendants violated her constitutional rights by arresting her and seizing her recording device in the Hamilton County Courthouse hallway on June 25, 2014. Therefore, her attorneys are entitled to full attorney fees for hours reasonably expended in representing her in this matter. *See Akrawi v. Remillet*, 504 F. App'x 450, 453 (6th Cir. 2012) (rejecting reduction in fees because claims were based on a common core of facts even though defendants were entitled to qualified immunity and plaintiff did not obtain all relief sought). Having determined above that the number of hours expended was reasonable, the Court declines

defendant's invitation to reduce the attorney fees because plaintiff did not obtain all relief requested.

In support of the request to reduce plaintiff's attorney fees by 50 percent for "limited success," defendant relies heavily on the Sixth Circuit's decision in *Hines v. City of Columbus*, 676 F. App'x 546 (6th Cir. 2017). (Doc. 177 at PAGEID 2921-2924). In *Hines*, the Sixth Circuit upheld the trial court's reduction of "excessive" attorney fees. *Hines*, 676 F. App'x at 555. In that case, "[t]he court compared the size of the jury verdict ($30,000) to Plaintiff's last settlement demand ($5,000,000), and Defendants' last settlement offer ($10,000)." *Id.* at 556. "Considering a rejected settlement offer is one way of measuring the degree of success." *Id.* (citing *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 494, 495 (6th Cir. 2014)). In this case, defendant offers no evidence of a settlement offer in any amount nor that plaintiff ever made such an enormous settlement demand. At trial, plaintiff suggested compensatory damages of $70,000; she sought no punitive damages (unlike *Hines*); and the jury awarded Enoch $35,000.

This Court, as the Sixth Circuit reiterated in *Hines*, agrees that "when a plaintiff achieves limited success, a fee award based on the lodestar calculation may be excessive, even if the claims are interrelated and nonfrivolous." 676 F. App'x at 556 (citing *Hensley*, 461 U.S. at 436)). Unlike *Hines*, however, this is not such a case. In *Hines*, the trial court concluded that plaintiff's counsel included both an "unreasonable" number of hours and an excessive hourly rate for out-of-forum counsel. *Id.* at 549. After red-lining certain hours and reducing the excessive hourly rate, the trial court examined the parties' settlement negotiations and reduced the lodestar amount due to "'minimal' degree of success obtained."[4] *Id.* Hines filed suit on

---

[4] In reducing the lodestar amount for limited success, the District Judge specifically noted:

> In a telephone conference on March 11, 2016, the attorneys for Plaintiff and Defendants informed the Court of the parties' last written settlement offers: Hines's last offer was $5,000,000;

10

October 25, 2013 and amended his complaint on October 31, 2014; mediation occurred in December 2014 and March 2015; trial began on September 21, 2015; and plaintiff sought attorney fees on October 12, 2015.[5] In *Hines*, less than two years elapsed between filing the complaint and seeking attorney fees, and the Court openly stated that plaintiff's counsel could have settled the case for the same or possibly greater damages well before trial. *Hines*, 2016 WL 2342014, at *8.

In contrast, the case at bar lasted more than six years and included not one but two interlocutory appeals. Unlike in *Hines*, defendant here offered no evidence of a settlement offer, fought plaintiff aggressively on every issue, continued to contest the case even after the jury award in Enoch's favor, and utilized a greater number of attorneys (and likely expended more attorney hours) than plaintiff in contesting this matter. Defendant made legitimate litigation decisions in doing so, but such tactics necessarily require plaintiff's counsel to reasonably expend more hours. "[Section] 1988 plays a critical role in 'ensur[ing] that federal rights are adequately enforced,' and attorneys have every right to be compensated for any fees and expenses they reasonably incur." *Binta B.*, 710 F.3d at 612 (quoting *Perdue*, 559 U.S. at 550). Thus, this case presents a much different factual scenario than that in *Hines*, and the Court declines to reduce the lodestar here for limited success.

---

Defendants' last offer was $10,000. With a chasm of $4,990,000 fixed between the parties, they exchanged no more written offers to settle. If they had, the Court believes that Hines would have received a settlement equal to or perhaps even greater than the jury's award.

*Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014, at *8 (S.D. Ohio May 4, 2016).

[5] The Court takes judicial notice of these dates available in the Court's electronic filing system for case number 2:13-cv-1058.

### C. Hours Expended on Corbin's Claim

Defendant next challenges any fees requested for work on plaintiff Corbin's claims because the jury returned a defense verdict on his claim at trial. (Doc. 177 at PAGEID 2924-2925). Plaintiff contends that Corbin's claims were so intertwined with Enoch's claims that there should be no reduction for work performed in furtherance of Corbin, particularly in light of the fact that he proved to be a valuable fact witness for Enoch. (Doc. 178 at PAGEID 2941).

"Prevailing party status is a 'statutory threshold' which must be crossed before there is any consideration of a fee award." *Howe v. City of Akron*, 705 F. App'x 376, 381 (6th Cir. 2017) (quoting *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006)). The Court, then, is "required to determine whether each plaintiff was, in fact, a prevailing party." *Id.*

"[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (internal citations omitted). "Only under these circumstances can civil rights litigation effect 'the material alteration of the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party." *Id.* (quoting *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-793 (1989)).

In this case, plaintiff Corbin cannot be considered a prevailing party. Only his First Amendment claim survived the pretrial process, and the jury returned a defense verdict on Corbin's First Amendment claim. (Doc. 156 at PAGEID 2377). Therefore, he has not passed the "statutory threshold" to recover attorney fees under 42 U.S.C. § 1988.

The Court, then, must determine how many billable hours can be attributed solely to Corbin's claims. Enoch's and Corbin's claims are extremely intertwined, both factually and legally. Indeed, video evidence and trial testimony indicated that it was Enoch's decision to follow Corbin while both recorded events in the public hallway that brought Enoch to the arresting deputies' attention. Thus, it is difficult to parse out the hours attributable to Corbin's claims alone. Indeed, even though defendant makes very specific suggestions for hour reductions in other categories, defendant suggests no method for determining the appropriate reduction for work related solely to Corbin. (Doc. 177 at PAGEID 2924-2925). Because plaintiffs Enoch and Corbin were recording simultaneously in the hallway and arrested together, Corbin would still be a necessary fact witness for Enoch's claims. Thus, entries such as Newman's March 28, 2019 "prepare direct exam of Corbin (4.5)" and March 5, 2022 "meeting with Corbin" were done in furtherance of Enoch's claim even though they directly reference the non-prevailing plaintiff, Corbin. (Doc. 162-1 at PAGEID 2637, 2642). Even emails and meetings in this case appear most commonly to have included Enoch and Corbin simultaneously, and all motions, briefs, and trial documents involved Enoch and Corbin jointly. (Docs. 162-1, 162-2).

To account for Corbin-specific discovery and other activities, the Court will reduce the lodestar by five percent. It is very difficult to parse out attorney time spent solely on Corbin's claims, and the five percent likely gives defendant an overly large discount on fees in this case, having observed this litigation from start to finish and noting that plaintiffs' attorneys already exercised billing judgment and reduced their hours to eliminate duplication. However, in an effort to do "rough justice" pursuant to § 1988, the Court will err on the side of overestimating the amount of attorney time spent on Corbin's claims. The lodestar of $536,088.20 ($191,902.50

for Newman and $344,185.70 for O'Hara) will be reduced by five percent ($26,804.41) to $509,283.79 to remove time billed in furtherance of the non-prevailing plaintiff's claims.

As for the supplemental motion for attorney fees (Doc. 179), the Court finds that the hours reasonably expended multiplied by plaintiff's counsel's hourly rate of $500 (the lodestar) is reasonable. However, the lodestar will be reduced by $3,125.00. Specifically, the following requested amounts will be disallowed because the hours were expended for the benefit of plaintiff Corbin, a non-prevailing party: $1,000 from the amount billed on March 14, 2022 for the portion attributable to research regarding "non-reduction for Corbin's claim" (Doc. 179-2 at PAGEID 2951); $1,000 from the amount billed on March 15, 2022 for portion attributable to research applicable to the fee issue as it relates to Corbin's claim (*Id.*); $1,000 from the amount billed on July 3, 2022 for portion attributable to drafting reply memorandum as it relates to Corbin's claim (*Id.* at PAGEID 2952); $50 billed on March 30, 2022 for "email exchange with RBN re strategy for settling Corbin" (Doc. 181 at PAGEID 2960); $25 of the $50 billed on April 26, 2022 for email exchange "re Enoch and Corbin memos" (*Id.*); and $50 billed on June 13, 2022 for email related to "possible appeal for Corbin" (*Id.* at PAGEID 2961). The Court notes that, again, plaintiff's counsel applied billing judgment and reduced the number of hours expended by marking more than six of the hours expended with "NO CHARGE." (Doc. 181 at PAGEID 2959-2962).

As argued in opposing plaintiff's motion for attorney fees, defendant reiterates the argument that plaintiff's supplemental attorney fee request should be reduced "by 50% based on Plaintiff's limited success in this matter." (Doc. 180 at PAGEID 2955). However, it is well settled that § 1988 permits the award of reasonable attorney fees expended in securing the attorney fee award. *NE Ohio Coalition for the Homeless*, 831 F.3d at 723 (acknowledging that

"fees for fees are recoverable under §1988" because to conclude otherwise would frustrate the underlying Congressional purpose).

In addition to those hours reasonably required to secure an appropriate attorney fee award, plaintiffs' counsel, in the supplemental motion for attorney fees (Doc. 179), seeks payment for hours reasonably expended in opposing defendant's post-trial motion for judgment as a matter of law on Enoch's claim. Defendant, knowing the jury's precise award to Enoch, logically cannot pursue post-trial motions to defeat the jury's award and then seek to avoid paying Enoch's reasonable attorney fees in securing the jury award on the basis that the jury award was too low to justify fees. Accordingly, the Court rejects defendant's request to reduce the supplemental attorney fees for limited success.

### D. Costs

Plaintiff seeks costs totaling $1,940.45. (Doc. 162 at PAGEID 2614). The supplemental fee petition does not request additional costs. (Doc. 179 at PAGEID 2945). Defendant does not dispute plaintiff's request for costs of $1,940.45. (Doc. 177). Therefore, costs will be awarded as requested.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff Vanessa Enoch's motion for attorney fees (Doc. 162) and motion for supplemental fee award (Doc. 179) are **GRANTED** subject to a reduction for hours spent solely on non-prevailing plaintiff Avery Corbin's claims;

2. Attorney Robert Newman is awarded $182,307.37 in attorney fees and $20,800.00 for supplemental attorney fees;

3. Attorney Michael O'Hara is awarded $326,976.42 in attorney fees and $16,537.50 for supplemental attorney fees;

4. Attorney Robert Newman is awarded $446.90 in costs; and

5. Attorney Michael O'Hara is awarded $1,493.55 in costs.

Date: 10/21/2022

Karen L. Litkovitz
United States Magistrate Judge